On the Merits.
 

 OVERTON, J.
 

 On January 31, 1922, the Marine Bank & Trust Company caused a writ of seizure and sale to issue from an order granting executory process to foreclose a mortgage given by John D. Shaffer, to secure four promissory notes for large amounts of money, two of which notes were held by the Marine Bank & Trust Company. On the same day, through the same attorneys, the Bank- of Houma, which held the two remaining notes, secured by the foregoing mortgage, also applied for and was granted executory process to foreclose said mortgage. The Ardoyne plantation was seized under these writs, or was ostensibly seized thereunder. For the purpose of making the sale the writs that issued in these suits were consolidated. Apparently; the refinery on the plantation was first sold and then the plantation itself. Both were adjudicated to W. W. Young, who was one of the attorneys of record for the seizing creditors.
 

 About a month after the foregoing proceedings for executory process were instituted, the Marine Bank & Trust Company obtained a judgment by confession against John D. Shaffer, B. Randolph Shaffer, John J. Shaffer, Jr., and Miss Mary Frances Shaffer for $23,432.79, on a note secured by a different mortgage from the one mentioned above.
 

 On March 31, 1922, acting under a writ of fieri facias, which it caused to issue from the judgment obtained by confession, the Marine Bank & Trust Company seized by garnishment process certain small amounts of money belonging to the Shaffers, or some of them, and the sheriff under said writ also seized certain real and personal property belonging to the judgment debtors.
 

 On April 3,1922, the Shaffers against whom the judgment by confession was rendered instituted a suit to annul that judgment and to enjoin its execution, and at the same time instituted a suit to annul a judgment for a similar, amount, obtained by the Bank of Houma by confession against them, and to enjoin the execution of that judgment. The bonds ordered to be furnished by the district judge for these injunctions appear never to have been furnished, and therefore the injunctions were not issued. The suits for the nullity of these judgments were consolidated for trial, and on August 21, 1923, judgment was rendered rejecting the demands to annul them. No appeal was perfected from the judgment rejecting these demands at the time the present litigation was disposed of in the court below.
 

 On July 5, 1922, the Marine Bank & Trust Company caused another writ of fieri facias to issue from the judgment by confession obtained by it. Under this writ, which issued while the suit for the nullity of that judgment was still pending, the sheriff seized certain real and personal property, including a stock of merchandise, belonging to the Shaffers, which was in large part the same property seized by the sheriff under the writ of March 31, 1922. The sheriff held this property under seizure, without advertising it for sale; and, on September 12, 1922, the writ being about to expire, he returned the original and retained a copy of it, reciting in the return that he was still holding the property under seizure, and that he had not ad
 
 *169
 
 vertised it for sale, acting under instructions from the attorneys for the hank, who had instructed him not to advertise the property for sale until the receipt of instructions from them.
 

 On March 28, 1922, John D. Shaffer, whose wife died after the granting of the mortgage on Ardoyne plantation, under which that plantation and the refinery thereon were sold, the heirs of Mrs. Shaffer, who are B. Randolph, John J., and Mary Frances Shaffer, instituted a suit to annul the sale of Ardoyne plantation and of the refinery, bringing the suit against the Marine Bank & Trust Company, the Bank of Houma, the sheriff, and W. W. Young, the last of whom they considered as having purchased the plantation and the refinery thereon for both of said banks. This suit appears not to have been tried up to the time the present litigation was disposed of in the lower court.
 

 On December 8, 1923, the Marine Bank & Trust Company caused another writ of fieri facias to issue from the judgment it had obtained by confession, which made the third writ issued by it from that judgment. Under this writ the sheriff, on January 2, 1924, seized all of the interests of the Shaffers in the suit to annul the judgment obtained by the Bank of Houma against them, the judgment disposing of that suit being then still subject to appeal, and also all of the interests of the Shaffers in their suit to annul the sale of Ardoyne plantation and of the refinery thereon, and proceeded to advertise the interests so seized for sale. While these interests were being advertised, the sheriff, according to his return on the writ of fieri facias, under which the seizure was made, states that, while the advertisement was in progress, he was enjoined from proceeding with the sale. In returning the original of that writ he recites that he retains a copy of it, under- which he continues to hold the property seized under the original writ.
 

 The injunction referred to by the sheriff in his return is one sued out by the Shaffers against the Marine Bank & Trust Company and that official. The suit in which it issued is the case presented to us to be decided. The injunction was sued out to prohibit the bank and the sheriff from proceeding further with the sale of the rights of the Shaffers in the two suits for nullity seized under the writ of December 8, 1923. Coupled with the demand for the issuance of the injunction are demands for judgment declaring the writ that issued on July 5, 1922, fully satisfied, condemning the bank and the sheriff to pay the Shaffers $2,500 attorney’s fees, as damages for the illegal seizure made of their property, and perpetuating the writ of injunction, which they prayed be issued. The suit is based upon allegations showing the several writs that issued from the judgment obtained by confession; the return on the original of the writ that issued July 5, 1922; the retention by the sheriff of the property seized and of a copy of that writ. The petition also contains allegations to the effect that the bank is without right to seize all of the corporeal property belonging to the Shaffers, under a writ of fieri facias, and then order the sheriff not to sell the property seized, or credit the writ with amounts collected, then issue another writ and seize the rights of the Shaffers in suits pending^ against the bank; that until the sheriff has made final return on the writ that issued July 5, 1922, crediting it with all cash received, and allowing for the loss and deterioration resulting from the unlawful and disastrous detention of the property seized, which continued for many months, he and the bank should be enjoined from proceeding further under the writ that issued on December 8, 1923; that the suit of the Shaffers to annul the sale of Ardoyne plantation and of the refinery thereon is a suit to recover real property; and that the sale of their rights in said suit
 
 *171
 
 should he advertised, not as was being done, for 10 days, but for 30 days, as is required for the sale of immovables; and that they, the Shaffers, have suffered damages in the sum of $2,500, as attorney’s fees, for the services of an attorney to obtain an injunction to prevent the illegal sale of their property.
 

 The defendants answered these demands, and the trial judge, after hearing the case, rendered the following judgment, to wit:
 

 “Let the preliminary judgment that issued herein be and the same is hereby perpetuated; let the defendants be and they are hereby 'enjoined from issuing or attempting to execute any further writ of fieri facias based upon the judgment against John D. Shaffer et al., rendered in suit No. 8391 of the docket of this court, under date of February 6, 1922, until full and due return be made upon the writs of fieri facias that issued therein prior to that of the writ, the execution of which is now enjoined, and until said judgment has been credited with all recoveries thereon either by the judgment creditor or by the sheriff under said writ; and let there be and the right is hereby reserved to plaintiffs in injunction, to challenge and ventilate the correctness of any return made under said writs; and to assert and show, if they can, any loss, deterioration or damage to their property now under seizure, or which they themselves may have suffered by reason of the prolonged continued detention of said property under the writ of July 5, 1922, and to have the same, if established, applied to the reduction of said judgment; and let plaintiffs in injunction have and they are hereby given judgment against the Marine Bank & Trust Company, defendant in injunction, for the sum of $1,250, as attorney’s fees, in the instant proceeding.”
 

 Pending the appeal from this judgment, John D. Shaffer died, and his heirs, who are the remaining plaintiffs in the present suit, were made parties appellee in his place.
 

 The first question that presents itself for consideration is the legality of the writ of fieri facias that issued on December 8, 1923, under which was seized the interests of the Shaffers in the suit to annul the judgment obtained by the Bank of Houma against them, and also all of their interest in the suit instituted by them to annul the sale of Ardoyne plantation and of the refinery thereon. It is this writ that plaintiffs claim is illegal, basing their contention upon the fact that when the writ issued there was a second writ of date July 5, 1922, a copy of which was still in the hands of the sheriff, under the original of which considerable property had been seized but had not been offered for sale, and that there was then still another writ of date March 31, 1922, in the hands of the sheriff, under the original of which property had also been seized, but had not been offered for sale, the property in each instance still remaining in the custody of the sheriff.
 

 Plaintiff contends, and the trial judge sustained him in that respect, that, an alias or a pluries writ cannot issue until the first writ, or the first and second writs, as the case may be, has been returned.
 

 The articles of the Code of Practice, touching the question provide:
 

 Article 641. “When the judgment orders the payment of a sum of money, the party in whose favor it is rendered may apply to the clerk and obtain from him a writ of fieri facias against the property of his debtor.”
 

 The third paragraph of article 642 provides that:
 

 “It shall be lawful for any judgment creditor, entitled to execution, to issue several writs of fieri facias to different parishes at the same time.”
 

 This article also provides that writs of fieri facias shall be made returnable in not less than 30 nor more than 70 days, and further provides that:
 

 “In all cases, except in the parish of Orleans, where a seizure of property. shall have been made under a writ of fieri facias, and the officer making- such seizure shall not be able to sell such property before the return day of the writ, such officer shall, nevertheless, make due return of such writ; but, at the time of making such return, he shall make and retain a copy of the writ, duly certified by himself; and it shall be his duty to proceed under such certified copy, in the same manner as though the original writ was in his hands, and to make due return thereon.”
 

 
 *173
 
 Article 652 provides (the extent of the seizure to be made having been previously provided for) that:
 

 “Nevertheless, if the debtor is of the opinion that the sheriff has seized more property'than could reasonably be thought necessary to discharge the judgment and costs, he may, on application to the judge who issued the writ, demand that an appraisement be made of the property taken by the sheriff.”
 

 “And .when several writs of fieri facias have issued to different parishes, defendant shall have a right to have a reduction of excessive seizure in the manner provided by special laws.”
 

 Article 653 provides for the reduction of seizures, when they appear to be excessive from appraisements made. Article 728 provides that:
 

 “If, after this report [meaning a return nulla bona], the judgment creditor discovers any property belonging to his debtor, he may obtain a new execution, to be carried into effect in the same manner as the one first issued.”
 

 We shall now consider the jurisprudence, pertinent to the question. . The first case to be considered is that of Mackey v. Trustees, 3 Mart. (N. S.) 390. That case arose before the adoption of the Code of Practice. It was there held that, where property has been seized under a writ of fieri facias and it does not appear that any disposition has been made of the property seized, an alias writ cannot be issued. The court there expressed the view that to allow an alias writ, under the circumstances, would be oppressive.
 

 The next case to be considered is that of Hudson v. Dangerfield, 2 La. 63, 20 Am. Dec. 297. That case was decided before the law provided for the issuance of several writs of fieri facias at or about the same time, from the same judgment, to different parishes, but notwithstanding that change in the law, the case is pertinent to one, such as the present, where the writs issued to the same parish. It there appears that the judgment creditor caused two writs to issue simultaneously from the same judgment, one directed to the sheriff of the parish of St. Mary, and the other to the sheriff of the parish of St. Martin. The court in that ease said that there was nothing in our law to authorize the issuance of two executions at the same time from one judgment, and further said that, if one of the executions issued after the' first, the second only is irregular, and that, if both issued simultaneously, the one first acted upon should be deemed regular, and, as to the other, if an attempt should be made to execute it, the execution might be enjoined.
 

 The last ease to be considered is that of State v. Judge, 3 Rob. 355. That was a suit for a mandamus to compel the issuance of an alias writ of fieri facias. The execution of the first writ had been enjoined, and the injunction had no,t been disposed of, when the alias writ was demanded. In that case, the court pointed out that the injunction would prevent the execution of the alias writ, even if issued, but also held that a second writ of fieri facias cannot be issued until the first has been returned, and for these reasons refused to issue the mandamus.
 

 In Corpus Juris it is said:
 

 “Before an alias or pluries writ can be issued, the writ previously issued, with an appropriate return indorsed thereon, must have been returned, because plaintiff is not entitled to have two executions upon the same judgment at the same
 
 time,
 
 and the futility of the previous execution cannot be made to appear otherwise than by the officer’s return. * * * ” 23 C. J. § 167, pp. 392, 393.
 

 And again, in the same work it is said:
 

 “As a general proposition where an execution has been levied upon property, an alias or pluries execution is not issuable while such levy is still in force and remains undisposed of, by sale of the property or otherwise. This rule has been considered necessary to prevent abuse and oppression. * * * ” 23 C. J. § 168, p. 393.
 

 While the law governing the issuance and execution of writs of fieri facias has under
 
 *175
 
 gone a few changes since the decisions rendered by this court and cited, supra, were handed down, yet these changes are not such as to affect the rulings, there made, as precedent in such a case as the present. The only change that we have been able to find, touching the question here under consideration, since the rulings were made in the last two cases cited, those of Hudson v. Dangerfield and State v. Judge, is the granting of the right to the judgment creditor to cause to be issued several writs of fieri facias at or about the same time to different parishes. That change was probably made to overcome the ruling in Hudson v. Dangerfield, so far as that ruling affected the issuance of writs to different parishes, but it .should be observed that that change was carefully confined to the issuance of writs to such parishes, thereby leaving intact the ruling in that case, so far as it affects the issuance of two or more writs to the same parish, and leaving undisturbed the rulings in the remaining cases cited. That change rather strengthens than weakens the force of these cases as precedent in support of the position, .taken by the Shaffers, the writs in their case (the present one) having issued to the samé parish.
 

 As aptly said in Mackey v. Trustees, supra:
 

 “To allow seizure after seizure under execution, at the whim and caprice of plaintiffs, without any attempt to sell the property first taken by the sheriff for the purpose of satisfying judgments, might lead to extreme oppression on defendants. Such a course of proceeding is, in our opinion, not tolerated by law; and ought to be arrested as soon as possible.”
 

 The only purpose of the law in authorizing the issuance of a writ of fieri facias is to collect the judgment from which the writ issues, and not to seize the judgment debtor’s property and hold it without attempting to sell it. To permit a judgment creditor to issue a writ and seize the debtor’s property, then issue another writ and make another seizure, and then, before final returns are made on the writs, and while the property seized is still being held without any effort to sell it, to obtain another writ, would be to arm the judgment creditor in such a manner as might lead to oppression. Such a course is not sanctioned by law.
 

 For, the foregoing reasons, we think that the Shaffers are entitled to judgment perpetuating the writ of injunction enjoining the Marine Bank & Trust Company and the sheriff from proceeding with the sale of their rights in the two suits mentioned, which were seized under the writ that issued on December 8, 1923, until final return has been made on the two prior writs that issued. It may be here said that the Shaffers do not ask that the second execution be enjoined.
 

 The view we have taken renders it unnecessary that we pass upon the remaining grounds for injunction, which relate only to the writ of December 8, 1923, and the proceedings thereunder. As relates to the credits that the judgment may be entitled to, barring the damages that the Shaffers may have suffered, these will appear when the writs are returned. It is impossible to fix these credits, or all of them, with certainty ' from the record in its present condition. Any credits to which the judgment may be entitled, which are not given before another execution issues, should another issue, will, of course, afford ground for another injunction should such a ground arise, which is not anticipated. As relates to the damages, referred to above, which the Shaffers may have suffered by reason of the detention of the property, and the deterioration or loss resulting, it may be said that they have neither alleged nor proved such damages, but the trial judge has reserved such rights as they may have to sue for them, and so shall we.
 

 As relates to the demand of the Shaffers for attorney’s fees for being forced to employ
 
 *177
 
 counsel to sue out the injunction to restrain the illegal seizure of their property, the trial judge allowed them $1,250. Attorney’s fees may be allowed the plaintiff in injunction in a proper case. Ludeling v. Garrett, 50 La. Ann. 118, 23 So. 94. In the case cited it was said:
 

 “It now only remains for us to determine whether the plaintiff in injunction, whose injunction is sustained, is entitled to recover attorney’s fees, as damages. We recall to mind two cases in which such a fee was sanctioned. In White v. Givens, 29 La. Ann. 573 (a case similar upon this point), the court said, ‘The seizure was unlawful,’ and allowed attorney’s fee to plaintiff in injunction, whose injunction was sustained. In Commission Co. v. Yale, 47 La. Ann. 695, 17 So. 244, also plaintiff in injunction recovered counsel fees.”
 

 We think, as observed by the trial court, that the test as to the amount of the fee to be allowed in such cases is the value of the property illegally seized, the .damage or inconvenience that might be sustained by the debtor by reason of the illegal seizure, if it should not be terminated, and the legal knowledge, skill, and labor required to secure the debtor in his'rights. We also agree with the trial judge when he says that the interests of the Shaffers in the two suits seized herein, which constitute the property seized under the last writ, are of debatable value, since they consist of the assertion of rights yet undetermined by the courts. However, in view of the debatable value of these interests, we think that the trial judge allowed too large a fee, and that a fee of $500 is sufficient. The judgment will be reduced accordingly.
 

 While the judgment rendered is in the main correct, save as to the amount of attorney’s fees, yet in some respects it is too broadly worded — a defect which may cause trouble in the future, unless removed. As a matter of convenience we shall set the judgment aside and recast it, rather than attempt to amend it in the usual manner. The Shaffers have asked for no change in the judgment rendered below.
 

 For the reasons assigned the judgment rendered is set aside, in order to recast it, and judgment is now rendered perpetuating said injunction, enjoining the Marine Bank & Trust Company and the’Sheriff from proceeding with the sale of the rights of the Shaffers, the plaintiffs in injunction, in the two suits which were seized under said writ of fieri facias that issued on December 8, 1923, until final return has been made on the two prior writs that issued from said judgment; and it is further ordered that plaintiffs in injunction have and recover judgment against said Marine Bank & Trust Company for $500 attorney’s fees, and that such rights as plaintiffs in injunction may have against said bank for damages for the deterioration or loss of their property, or any .part of it, under seizure when the judgment below was rendered, or which they may have suffered by reason of the prolonged detention of said property under the writ of July 5,1922, be reserved them, and that the right of plaintiffs in injunction, should that course become necessary, to establish such credits as they may be entitled to, on the judgment from which said writs issued, be also reserved them. It is further ordered that said bank pay the costs of the lower court, and that plaintiffs in injunction pay the costs of appeal.
 

 O’NIELL, C. J., dissents from the judgment allowing attorneys’ fees, but otherwise concurs.