No. 3432

Second Circuit

(Second Division)

CAMPTI MOTOR CO., INC., v. BOX
(STAR GAS CO., INC., Intervener and
Third Opponent)

(July 16, 1931. Opinion and Decree.)

J. Rush Wimberly, of Arcadia, attorney for plaintiff, appellee.

R. L. Williams, of Arcadia, attorney for defendant, appellant.

400

Phanor Breazeale, of Natchitoches, attorney for plaintiff, appellant.

S. R. Thomas, of Natchitoches, attorney for intervener and third opponent, appellee.

CULPEPPER, J. The contest in this case is between plaintiff in· the main suit and the intervener and third opponent, mainly as to whether or not plaintiff's lien and privilege arising under Act No. 209 of 1926 for accessories furnished and labor performed for repairs upon defendant's truck and trailer could be enforced subsequent to the sale of the truck by defendant to intervener.

Plaintiff, the Campti Motor Company, Inc., sold defendant, W. H. Box, certain automobile parts, tires and other accessories for use on defendant's Nabor Spring Trailer Chevrolet 1927 model truck and trailer; also performed certain labor on same for defendant, aggregating in amount the sum of $109.91. On April 28, 1928, plaintiff filed suit against defendant on said alleged indebtedness, prayed for and obtained a provisional seizure of the truck and trailer upon its alleged lien and privilege upon the property to secure the debt, as provided for in said Act No. 209 of 1926. The property was accordingly seized by the sheriff, the seizure taking place, according to the evidence in the record, in the afternoon of the 28th of April. The, exact hour is not made clear from the ·testimony. One witness testified it was between 3 and 4 o'clock; another places the hour at about 2 in the afternoon. The returns of the sheriff on the writ do not show the hour of the day ·the seizure took place.

On April 30th, two days after the seizure, the Star Gas Company, Inc., intervener and third opponent herein, through its manager, Mr. J. H. Roberson, made an affidavit of ownership of the property seized, in which it is averred:

"Affiant further deposes and says that the property so sequestered and described above is not and was not at the time of said seizure the property of the said W. H. Box, but was the property of the Star Gas Company, Inc.; that said Star Gas Company, Inc., obtained said property from said W. H. Box on April 28, 1928, for the consideration of the sum of three hundred and fifty and 25/100 dollars; that the Star Gas Company, Inc., was, at the time of said purchase unaware of any alleged claim against the said property other than a chattel mortgage for the sum of $86.25, and purchased . said property in absolute good faith and for a valuable consideration. This affidavit is made in order that said property may be released from seizure, or a bond of indemnity furnished by plaintiff to secure such damages as the Star Gas Company, Inc. may sustain herein."

On the reverse side of the above mentioned affidavit is what purports to be an indemnity bond.

The sheriff refused to deliver the seized property to the Star Gas Company, Inc., and on May 10, 1928, said Company filed petition of intervention and third opposition, setting up ownership of the property, reiterating the same claim of ownership as was averred in its affidavit previously made, and in addition, alleged that the property was not liable for the debt sued for by plaintiff; that the seizing creditor had no lien or privilege of any kind upon same. Intervener also set up claim for damages by reason of the alleged illegal

seizure of the property and the refusal by plaintiff to release same under the affidavit made, in the sum of $90 for loss of use of the property and $45 for attorney's fees incurred. Intervener accordingly prayed for judgment decreeing it to be the owner of the property seized and same ordered delivered to it, free of encumbrances; also prayed for damages in the sums above set out.

Plaintiff in the main suit filed answer of general denial to the petition of intervention, and specially alleged it had no knowledge at the time it seized the property that any sale of same had been made to anyone; averred that there was no record of any such alleged sale on the records of Natchitoches parish, as required by law in such cases; that the law takes no consideration of parts of a day in a case like this wherein the seizure and alleged sale took place on the same day, viz.: April 28th; that it was a matter of common knowledge in the village of Campti, the place where plaintiff and defendant resided, that defendant was indebted to plaintiff for accessories furnished and for labor and repairs made upon the truck; that intervener was aware of such facts, and failed to exact from defendant Box an affidavit that the property was free from debt and that no lien or privileges existed on same; denies intervener was in good faith as alleged; admits intervener filed affidavit of ownership and respondent's refusal to release the property, for the reason that it believed, in good faith, that the property seized was both in law and in fact the property of its debtor, Box; further averred it was well within its rights in refusing to release the seized property, but did execute an indemnity bond in favor of the sheriff as required by law, and avers that under the law intervener's remedy for damages is a suit on the bond, and not in connection with the intervention; that therefore the claim for damages as alleged on is premature and illegal. Prays that intervener take nothing by this action, etc.

The case went to trial upon the issues as thus set forth, resulting in a judgment in favor of intervener, decreeing the property to belong to and ordered sent into intervener's possession free from any liens or privileges; also giving moneyed judgment for intervener in the sum of $45 as attorney's fees and rejecting the demands for deprivation of use of the property. From this judgment, plaintiff in main suit, Campti Motor Company, Inc., has appealed. It will be noted that W. H. Box, defendant in main suit, did not contest the suit against him and judgment was rendered against him by default for the sum claimed.

That portion of Act No. 209 of 1926 applicable to the points in this case reads as follows:

"That any * * * corporation operating or conducting a garage, machine shop, repair shop, or other place where automobiles, trucks * * * are repaired or parts made therefor, regardless of whether such automobile, truck or machine be physically in such establishment during the making of such repairs or of parts for necessary repairs thereto, or regardless of whether such parts be actually attached in such establishment or elsewhere, * * * shall have a lien and privilege upon the automobile, truck, or machine * * * for a period of ninety (90) days from the date of making of such repairs or parts or performing such labor, said period to run from the last day such repairs * * * are made or labor performed * * *; and shall be entitled to enforce such lien and privilege by the writ of provisional seizure; provided, that this lien and privilege shall have no effect against * * * bona fide purchaser of such automobile, truck or machine to whom possession of same

has been delivered and for which the purchase price has been paid, without previous notice to such purchaser of the existence of such lien and privilege."

There is no dispute as to the fact that plaintiff in suit held a lien and privilege upon the truck and trailer, as furnisher of the accessories for and performance of labor thereon, at the time of the alleged sale by defendant Box to intervener. Furthermore, the evidence abundantly shows that the sale was actually and in fact made prior to the time of the provisional seizure. Negotiations for the sale were begun around 9 or 10 o'clock in the morning of the 28th of April, and was finally closed out about the noon hour of that same day by payment of the price and delivery of the truck and trailer to the purchaser, intervener herein, at intervener's place of business, where the truck and trailer were located at the time they were seized by plaintiff in suit some time between the hours of 2 and 4 in the afternoon of that same day. Mr. Roberson, manager of intervener company and who made the purchase for his company, was interrogated at length on cross-examination as to the price paid in an effort by counsel to show that no consideration, or price, had in fact been paid. Also defendant Box was severely cross-examined on that point. Their testimony, however, convinced the trial judge, as it does this court, that intervener did in fact pay for the property the price alleged to have been paid, which was $350.25.

It is equally certain from the testimony of these two gentlemen, Mr. Roberson and Mr. Box, and fully corroborated by the other testimony in the record, that intervener at the time of its purchase of the property knew nothing whatever of the existence of the Campti Motor Company's lien and privilege upon same. Mr. Roberson testified that he asked Mr. Box at the time if there were any liens against the property, and Box told him there were three mortgage notes for $28.75 each against it. Being asked by counsel if he had any knowledge of any other lien or claim against the property at the time he purchased it, Mr. Roberson said he did not; that he did not ask any questions about it. He says in another place in his testimony he "didn't have any knowledge of any claim except the mortgage notes." Being asked if the property had been delivered to his company, and if his company had possession at the time it was seized, Mr. Roberson testified most positively that it had, and that the property was in his company's possession at the time the seizure was made. He said that Box delivered the property to him about noon at his company's place of business in Campti and it remained there at that place on the premises until it was seized some two hours later. Mr. Box corroborates Roberson fully on this point. Box also testified positively that he did not inform Mr. Roberson of the existence of any lien or mortgage against the property other than that of the three chattel mortgage notes. He says he did not know that the debt he owed plaintiff in suit for which he was sued constituted a lien upon his property. He knew the chattel mortgage notes did, but thought the debt for the tires and other accessories and labor for which he was sued did not. He gives this as his reason for not telling Mr. Roberson about it when Roberson asked him about liens against the property. Box tells a rather frank story about the transaction, such as to indicate that his aim in selling the property was to enable him to pay all of his creditors on what he felt to be a fair basis as far as he was able. He owed plaintiff in suit the three chattel mortgage notes aggregating $86.25; owed a Mr. Mc-

Clain $220 for board and lodging; also owed McClain $40 for paying off one of his chattel mortgage notes for him, also $38 and $40 for casings McClain had bought for him. This made $346 he owed McClain. He says the Campti Motor Company came and got his truck and was holding it for what he was owing the company; and, not being able to pay the company, he went and sold the truck, got part in cash, then returned and paid Campti Motor Company the three mortgage notes and promised to pay the $109.91 account. He thereby secured the return of the truck to him, then carried the truck immediately and delivered it to Mr. Roberson, to whom he had just sold it. This was about the noon hour of that day. The Campti Motor Company did not know at the time that Box had sold the truck. Neither did the Star Gas Company, to whom Box sold the truck, know there was anything against the truck other than the three chattel mortgage notes. Mr. Roberson gave Box enough cash to settle these notes, thinking that was all that was against the truck.

This man McClain at the time owed Star Gas Company $200. He saw an opportunity to "kill two birds with one stone," and busied himself, naturally, to negotiate the deal. He goes to Roberson and talks the matter over, finding out how much Roberson is willing to pay for the property; then he goes to Box, who, being willing to accept the price, makes the deal at McClain's suggestion and solicitation. We do not see where hardly anyone should be blamed in connection with the transaction, unless it is Box. As to him, it appears to have been a matter of expediency. He owed debts he could not pay. By selling the truck and trailer, he could at least pay up in part. Campti Motor Company had taken his truck and trailer away from

him, and he felt he had to do something. Whatever favors he might have felt disposed to confer upon McClain in preference to the Campti Motor Company could in no wise affect the Star Gas Company's title to the property. We think, as did the lower court, that intervener was the bona fide purchaser, in possession, as owner, with the price fully paid, all without notice of the existing lien and privilege herein in question, at the time the seizure took place.

The court rejected intervener's demand for loss of use of the property, but gave judgment for attorney's fees in the sum prayed for. It will be noted that the judgment does not specify that this amount awarded for attorney's fees is for the dissolution of the writ of seizure, nor does the judgment recite in so many words decreeing the writ dissolved. It merely decrees intervener to be owner and as such sent into possession free from any claim of plaintiff in suit. The effect, however, of such a decree would necessarily be the dissolution of the writ.

Learned counsel for Campti Motor Company urges that his client should not have been cast for attorney's fees. He states his understanding of the jurisprudence of this state to be that attorney's fees, as an element of damages in cases of this character, are limited to the amount of such fees for dissolving the conservatory writ. Our attention is called by counsel to what appears to be the only testimony in the record on the subject of attorney's fees, which consists of the following admission shown at page 49 of the testimony:

"It is admitted by counsel for plaintiff in main suit that $45.00 is a reasonable attorney's fee for representing intervener or third opponent."

Counsel then points out that no question

·of the dissolution of the writ of provisional seizure is mentioned in that admission; ·that the whole case was tried together; that no distinction was made between the dissolution of the writ and the question of ownership; and .that, notwithstanding this, the trial judge granted intervener judg- ·ment for $45 as attorney's fees for trying the whole case.

There was no motion to dissolve the writ by third opponent. But this would have been done, if at all, by W. H. Box, the defendant in main suit. He alone was in position to take advantage of any defect in the pleadings to begin with, or as to the writ or the manner of the seizure. It must be understood that the intervener was a third party to the original suit and was not in position to except to that suit in any manner. His remedy was to proceed as he did, by making affidavit of ownership, or enjoin the sale of his ·property, or in some manner take steps to prevent his property from being sold out from under him. In short, the intervener was compelled to come into court to protect his rights. The question is, should he be compelled to appear at his own expense and defend title to his own property which had been seized in connection with a matter that he had had nothing to · do with and knew nothing about? We do not so understand the law. The very character of the intervention was such as to require trial of the whole case on the merits. Intervener had presented his affidavit of ownership in which was set up substantially his entire case as to the facts upon which he relied for the release of his property. Plaintiff in suit refused to release the property as result of the affidavit, and there was nothing left for intervener to do but to intervene and try out the issues on the merits. It is true, no injunction was prayed for, but, if it

had been, that would not have relieved intervener from ·having to set up and prove ownership. If anything, it would have increased the amount of expenses incident to the suit.

As to the contention that intervener's claim for damages was premature, as damages and attorney's fees should have been claimed in a subsequent independent action, the case of Hodge v. Monroe Mercantile Co., 105 La. 668, 30 So. 142, is authority for a contrary conclusion.

Counsel's position would be correct if defendant Box had defended the main suit and succeeded in dissolving the seizure and claimed attorney's fees himself. No such damages could have been awarded him for a dissolution upon the merits. There is a long line of decisions thus applicable to a defendant in the main suit. Lee Lumber Co. v. Hotard, 122 La. 850, 48 So. 286, 129 Am. St. Rep. 368; Albert Hanson Lumber Co. v. Mestayer, 130 La. ·688, 58 So. 511.

However, there is a different line of decisions which we think are applicable to and decisive of the point here raised. In White v. Givens, 29 La. Ann. 571, defendant Givens, proceeding under a judgment in his favor against White, had plaintiff's homestead seized· and was proceeding to have same sold by the sheriff. Plaintiff, the judgment debtor, enjoined the seizure and prayed for attorney's fees incurred. The case was tried upon the merits, resulting in dissolution of the injunction and awarding attorney's fees. The Supreme Court, in passing upon the question of damages, said:

"It is proper in estimating the damages occasioned by an unlawful invasion of the rights of a plaintiff to prove the loss, including· expense which he has incurred in preventing further wrong; and the reason-

able fees of an attorney may be allowed as well as any other expense occasioned to the plaintiff by the unlawful act of the defendant."

In Chapuis v. Waterman, 34 La. Ann. 58, defendant, Waterman, proceeding under a judgment in his favor against one A. M. Mir, seized a soda stand and contents which Mir was in charge of and which Waterman believed Mir owned at the time. Mir had been owner, but had sold and transferred by notarial act the property to Chapuis, plaintiff in injunction, only a short time prior to the seizure, for a debt Mir owed Chapuis, his mother-in-law, and the latter had left Mir in charge to operate the establishment for her. Finding Mir had remained in charge, and that no perceptible translation of possession had taken place, and considering the relationship between the parties, Waterman, refusing to accede to Chapuis' notification to him that she was the owner of the property, continued with the seizure. Whereupon Chapuis filed injunction against the sale and set up ownership. Waterman furnished an indemnity bond and proceeded to litigate the case, which resulted in establishing Chapuis as owner of the property and awarding her damages, including attorney's fees. The court, in passing upon the question of damages in this case, said:

"The fact that the dealings between plaintiff and Mir were such as reasonably to induce the defendant to believe that the property continued to belong to his judgment debtor, cannot exempt him from liability for proper damages, under the circumstances of this case. Had he seized without notice of the sale to plaintiff, he might possibly (though we do not so decide), have been exempt up to the date of such notice. But, having been advised of plaintiff's title and put on his guard, he acted at his peril when he disregarded it, and must abide the consequences."

White v. Givens, 29 La. Ann. 571; Dyke v. Walker, 5 La. Ann. 519; Willis v. Scott, 33 La. Ann. 1026; Gilkerson-Sloss Commission v. Yale, 47 La. Ann. 691, 17 So. 244; Ludeling v Garrett, 50 La. Ann. 118, 23 So. 94.

In Soniat v. Whitmer, 141 La. 244, 74 So. 916, 919, the court uses the following language on this question:

"It is clear that where one has abused legal process and causes the property of a third person to be seized for the debts of another, and the third person is compelled to go into court to maintain his title to the property seized and to have the illegal process set aside, a tort or quasi offense has been committed by the seizing creditor against the third person, for which he is responsible in damages, including attorney's fees."

In the above-cited case it was urged that such a case is not one for the allowance of attorney's fees, in view of the fact that, if error there was in the seizure of the property, it was an error of counsel, and an honest error induced by the judgment of the court. The court replied by saying:

"Honest or not, the error made it necessary for Soniat to employ counsel for protecting his property from a seizure under a judgment to which he was a total stranger, and the burden of this expense must fall either upon Whitmer and Lamar, who by their fault caused it, or upon Soniat who is entirely blameless in the matter. We think it should fall upon Whitmer and Lamar."

Upon application for a rehearing in the above case, the court discussed at length the question of damages allowable for dissolution of conservatory writs wherein it is made clear that in cases where the property of a third person has been seized for the debt of another, and the owner of the property has been compelled to go into court to maintain his possession and

ownership and to have the illegal process set aside, he should be allowed reasonable attorney's fees, as damages.

In the present case, the Star Gas Company, Inc., intervener, was a third person. Its property was provisionally seized by the Campti Motor Company, Inc., in a suit filed by it against W. H. Box. Intervener executed affidavit of ownership, presented same to plaintiff, and demanded release of the property, which was refused. Intervener was thus compelled to go into court to prove title and recover possession. It was necessary to employ counsel in doing so. Intervener was in possession at time seizure was made. This fact should in itself have put plaintiff on notice or should have suggested the probability that intervener had purchased the property, since usually the only formality in the sale of personal property is simple delivery. Besides, plaintiff alleged in its petition it feared defendant would dispose of the property, and for that reason asked that it be taken into the custody of the court. Counsel contends that plaintiff was in perfect good faith in believing defendant had not parted with title. It seems, however, under the Soniat and other cases therein cited, the question of good faith and element of probable cause, etc., will not excuse plaintiff in suit, Campti Motor Company, Inc., from liability, especially under the circumstances, as it acted at its own peril in refusing to release the seizure when confronted with the affidavit of ownership.

Learned counsel presents and urges the rather unique point that, since the sale and seizure both took place on the same day, with only a few hours intervening between the sale and the seizure, the law does not take into consideration parts or fractions of a day; and, hence the sale for that reason should not be considered as of any effect as against plaintiff's lien and privilege. Counsel cites in support of this point Territory v. Thierry, 1 Mart. (O. S.) 101; Tufts v. Carradine, 3 La. Ann. 430; Jackson Brewing Co. v. Wagner, 117 La. 875, 42 So. 356.

We find no reference made in the 1 Mart. (O. S.) case to the point in question. The 3 La. Ann. case involved the question as to which seizure, among several seizures under attachments on the same day, had priority. The court states in this opinion, Tufts et al. v. Carradine et al., 3 La. Ann. 430, that:

"The general rule that, the law admits of no fractions of a day, is subject to numerous exceptions. There are cases in which the law expressly forbids the different hours of the same day from being recognized as affecting the rights of parties; but the prohibition must be confined to the cases enumerated."

Under article 723 of the Code of Practice it is specially provided that, where several successive seizures are made of the same property, the creditors making them are entitled to a preference over other ordinary creditors, according to the order of their seizure. Article 724 of the Code expressly provides to the contrary with reference to attachments and sequestrations. In all of these provisions of the Code, however, they are dealing with two or more seizures or attachments or sequestrations of a kind. It is not therein sought to provide or stipulate as to who shall have preference in the case of a sale and a provisional seizure of the same property on the same day. In the absence of a law which specially provided to the contrary, the sale or seizure first made during the day would of course prevail. Counsel has pointed out no such statute, and we have been unable to find any.

We think the judgment of the lower court correct, and it is therefore affirmed.