No. 611.

JOHN W. WILLIS, JR., vs. LEM SCOTT, SHERIFF, ET AL.

When immovable property has been sold by authentic act, valid on its face and accompanied by actual delivery and continuous possession and control by the vendee as owner, a creditor of the vendor cannot seize the property in disregard of the transfer ; and, when enjoined by the vendee, such seizing creditor will not be allowed to allege and prove that the sale is a fraudulent simulation. Review of the whole jurisprudence of Louisiana on this subject.

The title of the vendee, under such circumstances, can only be attacked in a direct action in avoidance of the sale, whether revocatory or en déclaration de simulation.

And, in such direct action, whether revocatory or en déclaration de simulation, the plaintiff must aver and prove that the act sought to be avoided, operates injuriously to him.

APPEAL from the Fifth District Court, parish of Richland.   *Richardson*, J.

### Cobb & Gunby for Plaintiff and Appellee:

First—A man may dispose of his property as he sees fit, provided nobody is injured thereby.

Second—When a creditor seizes property in the possession of the vendee of his debtor and sets up that the sale was a simulation, it is incumbent on him to show that his debtor has not in his own name and possession sufficient property to discharge the debt.

Third—He who alleges fraud or simulation assumes the onus of proving it.

Fourth—Where a vendee is in possession of property under a recorded title translative of property, it cannot be seized as the property of his vendor.

Fifth—Where a creditor has enough property under seizure to pay his debt in the parish where the debtor lives and where the judgment was rendered and voluntarily releases that property and procures a pluries fi. fa. and has it sent to another parish and seizes under it property sold by the debtor to a third person who owns and possesses it, exemplary as well as special damages should be awarded against the seizing creditor.

### Boatner & Liddell for Defendants and Appellants:

First—When a sale of property under execution is enjoined by a third person, claiming to be owner of the property seized, he occupies the position of a plaintiff in a petitory action and must establish his title ; C. P. 396 ; 1 R. 42 ; 8 N. S. 662 ; 15 An. 136 ; 7 An. 89, 587. And in such case he cannot contest the rights of the seizing creditor, under his judgment but is confined to proof of his ownership. 7 An. 89 ; 31 An. 653.

Second—The writ of fi. fa. is exigible against all property of the debtor not exempt by law from seizure. R. C. C. 3183; C. P. 642, 643.

Third—The right to point out property for seizure under the writ is personal to the debtor. 12 M. 250. Hence, no third person can complain that the sheriff has seized that pointed out by the plaintiff in the writ.

Fourth—The law accords a right of action only to those who have a real and actual interest which they assert or defend. C. P. 15. Therefore a petitory action based upon a title shown to be simulated, must fall for want of an actual interest in the party asserting it; such a title may be disregarded by the seizing creditor, and will not be noticed by the court. 1 An. 364; 2 An. 325.

Fifth—The simulated title vests no rights, and creates no obligations. 24 An. 276; 1 An. 132, 262, 364; 5 An. 1, 668, 702; 6 An. 710; 10 An. 570.

Sixth—As truth alone should have place in a court of justice, no effect will be given to the simulated title, unless the interest of justice absolutely require it. 7 An. 89. Simulations are not governed by the rules and articles of the Code which apply to real though fraudulent contracts. The former may be disregarded, the latter must be avoided by the revocatory action.

Seventh—The allegation of the insolvency of the vendor is sacramental in the revocatory action—not so, when a simulated title is opposed to a creditor seeking to enforce his judgment by seizure of his debtor's property.

Eighth—The right of pleading discussion is only accorded to a security, or to a defendant in a hypothecary action, who can only exercise the right by pointing out other property sufficient to pay the debt, and advancing the necessary funds to subject it to sale. C. C.

Ninth—To permit the holder of a simulated title to prevent the sale of property covered by it, on showing that the debtor is possessed of other property, would be to put him in a better position than one authorized by law, to plead the benefit of discussion.

Tenth—When the subject-matter of a negative averment is peculiarly within the knowledge of the party holding the affirmative of the issue, the averment will be taken as true, unless disproved by that party. 1 Greenleaf, Sec. 78; 8 A. S. 462; 15 L. 45; 49 An. 295, 136.

Eleventh—The allegations of simulation and collusion involving a negative imposes the *onus probandi* upon the party holding the affirmative. Same authority.

Twelfth—If any proof at all be required to support the pleas, *prima facie* is sufficient. 4 An. 295.

Thirteenth—When a long series of simulated transactions are shown between father and son, the latter without means, sales of property to the son for a price which he has no means to pay, will be presumed simulated.

Fourteenth—When a fraudulent debtor has made sales of all his property, which has a market value, such sales will be injurious to creditors, though such debtor may have other property.

Fifteenth—The meaning of the word "value," as applied to property, is what it will sell for, and not the speculative opinions of witnesses as to what it is worth. 31 An. 202.

Sixteenth—Where a third opponent cumulates with his injunction an action of damages for malicious seizure and trespass, defendant may show the simulation of his title (if for no other purpose) do defeat his claim for damages. Willis vs. Ward, 30 An. 1285; 31 An. 369; 32 An. 396.

The opinion of the Court was delivered by

FENNER, J. The plaintiff enjoins the seizure, under *fi. fa.* issued against his father, J. W. Willis, Sr., of immovable property which he claims as belonging to himself.

The seizing creditor defends by charging that the title of the plaintiff is a fraudulent simulation, and that the property really belongs to his judgment debtor.

The plaintiff, in support of the allegations of his petition, exhibits a conveyance by authentic act of sale from the judgment debtor, antedating the execution enjoined by a considerable period, for a price, adequate in amount, represented by his negotiable note secured by mortgage and vendor's lien, actually executed and delivered to the vendor, and still outstanding and unmatured at the date of this suit. The evidence is uncontradicted that the sale was accompanied by actual delivery of the property to the plaintiff, as vendee, who has possessed, controlled and administered it, as owner, ever since.

He further proves, by satisfactory testimony, that his vendor, the judgment debtor, is possessed of ample property to satisfy the defendant's judgment, and that if, after discussion thereof, defendant's judgment remains in any part unsatisfied, the said judgment, by virtue of record prior to the sale to plaintiff, is secured by the first judicial mortgage on the very property seized, which may be enforced by the hypothecary action.

Defendant's evidence tends to contradict the sufficiency of his debtor's property for the satisfaction of his judgment, and to establish the simulation of plaintiff's title; but does not attack the apparent validity of the title, nor the delivery and continuous possession of plaintiff.

The plaintiff relies, for the affirmance of the judgment perpetuating his injunction, on the following propositions, viz.:

1st. That, having exhibited his title to the immovable seized, by authentic act of sale, executed by the delivery of his negotiable obligation for the price in accordance with its terms, and also by the actual delivery of the property, and having established his continuous possession, administration and control, as owner—such title and possession are, in law, so presumably real, that they cannot be disregarded by a seizure, but can only be attacked in a direct action.

2d. That a creditor has no right to attack, directly or indirectly, either fraudulent or simulated conveyances of his debtor, without alleging and proving that they operate injuriously to him—which, he contends, is neither alleged nor proved in this case.

3d. That the evidence does not establish the simulation of plaintiff's title.

It is difficult to reconcile all the decisions on this subject, but it cannot be denied that the weight of authority maintains the correctness of the first proposition above stated. In Barbarin vs. Saucier, 5 N. S. 361, a third person enjoined the seizure of a slave claimed by him as his property under a sale from the judgment debtor. The defense was precisely similar to that interposed here, viz.: that the sale was collusive and simulated and designed to defraud creditors. The Court said:

"The sale, whether fraudulent or not, vested the legal title to the slave in the plaintiff, and until set aside by the action which the law gives to creditors for that purpose, the sheriff has no right to seize it as the property of the vendor."

Although the Court uses the word "fraudulent," the statement of the issue shows that it means "fraudulent simulation."

In Peet vs. Morgan, 6 N. S., on precisely the same issue of *fraudulent simulation,* the Court reiterated the doctrine and gave the following reasons : " The principle on which it rests is, that men are presumed to act honestly, until the contrary is proved ; that the conveyances alleged to be fraudulent are, *prima facie,* correct and fair, and that it is improper, in opposition to these presumptions, the creditor should exercise rights that could only properly belong to him, in case the acts of his debtor were null and of no effect. In many instances, should a contrary doctrine prevail, sales, which were alleged fraudulent (simulations), might turn out to be *bona fide* (and real) and the purchaser be deprived of the use of property which was honestly his. In the uncertainty which must prevail until the matter undergoes a judicial investigation, it is certainly the wisest course, and the one most conducive to general utility, to consider the thing sold as belonging to him in whom the title is vested."

In both the above cases, we assume, as was no doubt the fact, that the claimant had possession as well as title.

In the following cases, it has been distinctly decided that, where the third person enjoining held under a conveyance, valid on its face, accompanied by delivery and continuous possession, as owner, to the date of seizure, and where the defense was, as in this case, fraudulent simulation, a seizure, in disregard of such title and possession, could not be sustained, but the creditor must resort to a direct action, revocatory, or *en déclaration de simulation.* Peet vs. Morgan, 6 N. S. 140, 580 ; Yocum vs. Bullitt, id. 324 ; Trahan vs. McManus, 2 La. 214 ; Weeks vs. Flowers, 9 La. 385 ; Morton vs. Crosby, 14 La. 426 ; Presas vs. Lanata, 11 R. 288 ; Kirkland vs. Gas Co., 1 An. 300 ; Collins vs. Shaffer, 20 An. 41 ; McAdam vs. Soria, 31 An. 864 ; Payne vs. Graham, 23 An. 773. See, also, 17 La. 555 ; 1 Rob. 435 ; 2 R. 389 ; 7 R. 234 ; 12 R. 95.

Some question has been made as to the application of this doctrine, in its full extent, to movable property, but its application even to such property has been sustained in several cases, and notably in McAdam vs. Soria, 31 An. 864. On this question, however, we express no present opinion. As applied to immovable property, the doctrine has never been directly questioned.

We have not failed to observe that, in most of the cases quoted, the language of the Court refers to acts of *fraud;* but, in all of them, the

issue is distinctly stated to be *fraudulent simulation,* and we are com-
pelled to assume that the *fraud* referred to, is fraudulent simulation.
The defendant opposes to this doctrine the well-established principle
that, in cases of simulation, the creditor may seize, notwithstanding the
apparent transfer, and if enjoined, may plead and show the simulation
on trial of the injunction.

We have examined the authorities referred to, by defendants' coun-
sel, in which this doctrine was announced, viz.: 5 An. 1, 668, 702 ; 6 An.
710 ; 10 An. 570, and in all of them it appears that claimant had never
had possession. The same feature appears in 1 Rob. 31 ; 7 An. 89 ; 15
An. 5, 53, 177 ; 19 An. 153 ; 29 An. 4 ; 2 An. 323, 912 ; 6 An. 716 ; 12 An.
173, and many other cases holding this doctrine. We find no case dis-
tinctly holding that immovable property held under a title, translative of
property, valid on its face, and accompanied by actual delivery and
continuous possession and control as owner, could be directly seized by
a creditor of the transferrer.

To reconcile the two lines of authority, it is necessary to regard the
case last stated as an exception to the general rule, that simulated titles
may be disregarded and direct seizures made at the suit of creditors of
an alleged real owner. The defendant also refers to several authorities
holding that, when a sale of property under execution is enjoined by a
third person, claiming to be owner, he occupies the position of a plaintiff
in a petitory action and must establish his title. In 1st Rob. 41, and 7
An. 89, the only ones directly in point, the claimant had never had pos-
session. In 8 N. S. 662 and 15 An. 136, it was merely held that seizure
could not be released without proof of claimant's title and possession.
It was neither held nor suggested that, after plaintiff had proved au-
thentic title and possession, the creditor could, under his seizure, attack
them as fraudulent simulations without overcoming, by contrary proof,
the *prima facie* sufficiency of the title, or the fact of possession. We
are far from desiring to extend, in any manner, the opportunities of
debtors to embarrass and delay the pursuit of creditors, by fraudulent
manipulations of titles to property. But authentic titles to real estate,
valid on their face, published to the world by proper record, accompa-
nied by delivery and continuous control as owner, afford such potent
presumptions of ownership, that to permit the holder's possession to be
divested by seizure under an execution against another, in advance of
any proof of merely alleged fraud and simulation, would open the door
to gross abuses, and would be a reversal of the ordinary course of reme-
dial justice. The only foundation of the creditor's right would be in the
proof of his allegations. Ordinarily, the establishment of the right
must precede the exercise of the remedy. The exceptions presented in
the cases of the conservatory writs, are limited and strictly construed,

and are guarded by bonds for damages. It is better that the creditor should suffer the delay incident to the establishment of his right by direct action, than that presumptive, and possibly real, owners should be stripped of possession, under proceedings to which they are not parties, and upon allegations which they dispute, and which have not been proved.

In the case of immovable property (to which, be it understood, this opinion is confined), the remedy of the creditor by direct action is perfect and complete. The mere institution of the suit fastens the property in its existing condition, and prevents its alienation or incumbrance, to the prejudice of his claim. He can suffer no harm, except the delay, and, if successful, must find the property, at the end of his suit, open to the execution of his established right. Surely, it is better that he should submit to the delay incident to the judicial enforcement of all litigated rights, however clear, than that third persons should be subjected to the risk of such invasions of their most sacred rights of property.

In most of the cases, in which a contrary doctrine has been indicated, it will be found that there was either entire absence, or interruption, or some infirmity or ambiguity of the possession established, which tended to rebut the presumption of ownership, and to create an *indicium* of simulation. Where the title, possession and control of the claimant have all been perfect and complete, on their face, it has never been held, in any well-considered case, that the transaction could be treated as such a pure simulation as to maintain a direct seizure.

Particularly should this doctrine be enforced in a case, like the present, where the consideration stated in the act is evidenced by a negotiable promissory note, actually executed and delivered, and out-standing, unmatured, at the date of seizure. Whatever be the under-standings between the parties, the vendor could not claim the restitution of the title without surrendering the note. To maintain the seizure and sale of the property, while leaving the note, unmatured and capable of transfer free from all equities, in the hands of the vendor, would expose the claimant to grave danger.

Nor can we maintain the doctrine that a creditor can, directly or indirectly, attack the authentic title and possession of a third person, upon the ground of either fraud or simulation, without alleging and proving that they operate injuriously to him.

It is admitted that such allegation and proof would be necessary in a direct action *en déclaration de simulation;* and we can conceive of no reason or principle upon which the creditor may escape this necessity by beginning with a direct seizure. The cases cited (1 R. 41 ; 15 An. 136 ; 8 N. S. 662 ; 1 An. 364 ; 7 An. 89 ; 2 An. 325), are either cases in

which the claimant had not possession, or only hold that the enjoining claimant must administer proof of his pretensions. But when he alleges and proves title, valid on its face, and possession, such title and possession cannot be assailed, in any form, by a creditor, without proving injury and interest. In the instant case, it is manifest the creditor is not injured, because not only has his debtor sufficient property to satisfy the debt, but the very property seized was sold to the plaintiff subject to his judicial mortgage, and may be subjected to the payment of his judgment, irrespective of whether the plaintiff's title be real or simulated.

The foregoing grounds are sufficient for the decision of this case, and we shall, therefore, express no opinion on the question of simulation *vel non*, which the defendant may raise by direct action and on proper allegations, if he think the evidence in this case could sustain him.

Whenever questions of this kind are properly presented, we shall probe the good faith and reality of transactions with merciless penetration. We think the District Judge has done justice, and reject the prayer for increase of damages.

The judgment appealed from is affirmed at appellants' cost.

---

## On Rehearing

The opinion of the Court was delivered by

Todd, J. The rehearing was granted in this case solely with respect to the damages allowed in our decree.

It must be admitted that the decisions upon the question whether a third person, opposing the sale of his property, seized for the debt of another, and enjoining such sale, is entitled to claim damages in the same suit, for attorney's fees incurred in the prosecution of the suit, are somewhat conflicting. But, inasmuch as we have no doubt that such claim might constitute, in some cases, an element of damage to be prosecuted by a separate action, and, moreover, as, in this case, the claim does not seem to have been contested in the lower court, and evidence was admitted, without objection, to support it, thus showing a tacit acquiescence in the right of the plaintiff to prefer such claim in the present action, we are not prepared to say that the allowance of such claim by the lower court, under these circumstances, was wrong; and, without committing ourselves to any decision on this point, we do not feel authorized to disturb our decree affirming the decision of the lower court in this respect.