## No. 11,684.

### GILKERSON-SLOSS COMMISSION COMPANY VS. YALE & BOWLING, IN LIQUIDATION.

Damages for an illegal seizure will not be awarded in favor of the claimant of the property in case his title be involved in litigation, or doubt reasonably exist as to its realty.

The law favors the right of a creditor, and will protect him in every reasonable and proper effort to collect his debt, and will only mulct in damages those who resort to illegal or wanton acts to unduly and illegally coerce payment.

The owner whose property has been seized as that of another, and who is compelled to go into court to protect his rights, is entitled to be reimbursed by the seizing creditor a reasonable amount for counsel fees.

APPEAL from Fifth Judicial District Court for the Parish of Morehouse. *Potts, J.*

*Newton & Hall, G. W. Ellis* and *Bussey & Naff* for Plaintiffs, Appellees.

*E. T. Lamkin* for Defendants and Appellants.

Argued and submitted March 14, 1895.
Decided April 8, 1895.

The opinion of the court was delivered by

WATKINS, J.   The plaintiff company makes claim for four thousand dollars as the amount of damages it sustained in consequence of an illegal seizure of its property under the circumstances which are detailed in the petition.   The damages claimed having been liquidated by a bond of indemnity, which was executed by the defendant in favor of the sheriff, and by him duly endorsed to the plaintiff; both this defendant and his surety were cited and judgment *in solido* prayed for against them for the amount specified.

The claim and averment of the petition mainly are that the defendants caused to be made an illegal seizure of their property, and by virtue of a writ of *fieri facias* which was issued under a judgment in the suit entitled Yale & Bowling, in Liquidation, vs. Bond & Williams, the declaration of the petition being "that said seizure was without any cause whatever and a wrongful and illegal act; and said Yale & Bowling, in Liquidation, thereby damaged your petitioners in the sum of four thousand dollars, as hereinafter specifically set forth, which they with their surety were bound and obligated to pay under the said bond."

The defence is a general denial, admitting the seizure, coupled with the special allegation that instead of same " being maliciously made, as alleged, (it) was done after positive and reliable information (had been obtained) that the property seized belonged to Bond & Williams, their judgment debtors, in whose possession it was at the time, and had been long prior thereto, as the owners."

On these issues the case went to trial, and it resulted in a judgment against the defendants for the sum of five hundred and thirty-seven dollars and fifty cents, and from that judgment they have appealed.

In this court plaintiff filed an answer and asked that the judgment of the lower court be so amended as to award it the full amount of four thousand dollars originally claimed.

The seizure complained of in this suit provoked quite a serious litigation, which is covered by our opinion in the case of Yale & Bowling, in Liquidation, vs. Bond & Williams, Opposition of Gilkerson-Sloss Commission Company, 45 An. 997; and it was preceded by another litigation in which the same parties were participants, with the terms reversed, viz.: Gilkerson-Sloss Commission Company vs. Bond & Williams; Yale & Bowling, in Liquidation, and A. Baldwin & Company, Limited, Intervenors, 44 An. 841.

And as those cases embrace and pass upon many of the facts which are drawn in question in the instant case, we may as well make a brief synopsis of them at this time.

The latter (44 An. 841) involves an attachment of the property of the defendants, Bond & Williams; and the intervenors alleging fraud and collusion between the plaintiff and defendants, sought to dissolve the writ and subject the property attached to their judgments.

On the facts found this court affirmed a judgment of the District Court sustaining the attachment and rejecting intervenors' demands.

Subsequently, upon what are alleged to have been *newly discovered facts*, the intervenors caused executions to issue simultaneously under their judgments against Bond & Williams, and thereunder to be seized a stock of merchandise, the present plaintiff filing a third opposition thereto, coupled with an injunction restraining the seizure and sale, and claiming ownership of the property seized. (That is the former suit, 45 An. 997.)

On the issues thus joined this court held that in thus seizing property to which third opponents had title, the creditor necessarily assumed that opponent's title was a fraudulent simulation; and, further, that notwithstanding the fact that the continued apparent possession of the property by Bond & Williams after their sale to opponents raised a legal presumption of simulation, and put upon them the burden of showing its *reality*, they had discharged the burden of proof satisfactorily, and were entitled to the release of the property from seizure.

It is upon this *status* of the protracted litigation between these rival litigants, primarily enjoying no legal preference on the property of Bond & Williams, as debtors in common, that this action in damages is predicated.

We have appended a brief synoptical *résumé* of plaintiffs' claims, as we find it recapitulated in their brief, as follows, viz.:

" The claims in this suit against A. Baldwin & Co. are for the following amounts, viz.:

| | |
|---|---:|
| Trouble, harassment and annoyance to plaintiff | $200 00 |
| Loss of time of J. M. Gilkeson and ᴎ. E. Burwell | 250 00 |
| Traveling expenses and hotel bills of Gilkeson and Burwell | 75 00 |
| Goods destroyed, stolen and surreptitiously carried away | 400 00 |
| Goods deteriorated, damaged by rats, dust, mould, decay and becoming unsalable | 300 00 |
| Loss on net profits on sales that would have been made | 100 00 |

Gilkerson-Sloss Company vs. Yale & Bowling.

| | |
|---|---:|
| Great demoralization of labor and customers in both mercantile and planting business of plaintiff loss of good customers and loss of collections in consequence of suspension of business | $2,000 00 |
| Punitory damages for making a wanton seizure | 225 00 |
| Attorney's fees incurred in maintaining injunction | 450 00 |
| Total | $4,000 00 |

A casual examination of the foregoing statement discloses that the damage claimed is the immediate result of the defendants' seizure under execution, and in determining the defendants' liability and in ascertaining the *quantum* of damages, two things must, in a great measure, control our judgment: First, the previous litigation between the respective parties, and second, the conduct and acts of the defendant with respect to the plaintiffs' averment that the seizure was a " wrongful and illegal act," and " without any cause whatever."

Looking into the two decisions above referred to, we find the following to be the salient and controlling facts, viz.:

In 44 An. 841, the plaintiffs attached the defendants, Bond & Williams, on the ground that they had acted fraudulently in the sense of the provisions of Code of Practice 240, and the intervenors resisted the same on the ground that it had been solicited by defendants and fraudulently agreed upon between plaintiffs and the defendants, in order to place the property beyond the reach of defendants' creditors.

Our opinion holds that " from a careful examination of the record we are of opinion that the intervenors have failed to prove that the plaintiffs and defendants were guilty of fraud and collusion in the issuing of the attachment by plaintiffs against the defendants," reciting the controlling facts which were exhibited by the record.

It then states that "the plaintiffs purchased the property under seizure, and agreed to cultivate the plantations and conduct the commercial business in their own names, engaging the services of defendants at seventy-five dollars per month cash."

Of this and other circumstances related the court say:

" These are isolated facts, which taken by themselves lead to suspicion, but they are not sufficient proof and are explained away when taken in connection with other facts. They are logical sequences of the financial condition of the defendants. The efforts of the creditor to save his debt out of the wreck, and of the debtor to provide for the future, were legitimate, provided no creditor was injured."

The result of our conclusions was to affirm the judgment; and the result of the decree was to affirm the plaintiffs' presumptive acquisition of the defendants' property *pendente lite.*

In 45 An. 997, the defendants seized a stock of general merchandise situated in a storehouse in the town of Bonita, in Morehouse parish, which had been the place of defendants' business at one time, claiming that it was their property. The plaintiffs opposed and enjoined the seizure and sale on the ground that *they* were the owners and in possession under the agreement above quoted, to the effect that after their purchase opponents " agreed to cultivate the plantations and *conduct the commercial business in their own names, engaging* the services of the defendants at seventy-five dollars per month cash"—as stated in our previous opinion.

The opinion holds that the fact was that the sale was consummated and carried into effect as the parties had agreed. That opponents subsequently engaged Bond & Williams as their agents to take charge of the stock of merchandise and gave them a special procuration to that effect.

That under said mandate the goods went into the possession of the opponents after the sale, and continued in their possession and under their management up to the date of the creditors' seizure under *fi. fa.*

The answer of the creditors to the opposition was that the pretended agency of the defendants, Bond & Williams, was a fraudulent simulation intended to screen *their* property from the pursuit of creditors—the defendants being at the time notoriously insolvent, and the real and actual owners of the property.

Hence the sole question presented for our decision was simulation *vel non;* and our opinion so holds. On an examination of the facts adduced *pro* and *con*, we reached the conclusion that the transaction was not a fraudulent simulation, but a *real* one that was intended to convey the property, and affirmed the judgment.

There are two features of that case which are noticeable. First, that Bond & Williams, debtors of the plaintiffs (defendants here), were in the *actual possession* of a stock of merchandise they had once owned, thus inviting seizure; second, that on the proof being adduced, we found as a fact that the transaction was a *real* one. The additional facts that were adduced on the trial of the instant case are not different.

The debtor's possession after a sale is presumptive evidence of simulation. R. C. C. 2480.

Under the foregoing state of facts our conclusion is, that defendants' seizure can not be considered altogether unjustifiable, or a wrongful and illegal act, notwithstanding the disclosures made in the previous suits. For it must be observed that the title of the Gilkeson-Sloss Commission Company to the stock of goods has never been judicially and contradictorily determined; and is still an open question.

The litigation between the parties has been protracted and expensive and attended with great hardship to all the parties engaged therein. In view of the fact that the ownership of the stock of merchandise has never been passed upon, and is still matter of doubt, though possibly beyond the reach of a judicial decree, we must decline to award damages on the score of the loss and deterioration in value of goods, and demoralization of customers of the store and the like.

Nor do we think that the plaintiffs' trouble, annoyance, loss of time, and the incidental expense of the litigation are proper subjects for an allowance of damages, under the circumstances of doubt and uncertainty in which plaintiffs' title is involved.

The defendants' seizure does not present the least *indicia* of wantonness, or want of probable cause, and no punitory damages can be allowed. But defendants' seizure did put the plaintiff to the expense of employing counsel to resist the sale of the property, and defend his claims on appeal. Fees of counsel are put down in the plaintiffs' estimate at four hundred and fifty dollars, and they are admitted to be worth three hundred and fifty dollars, with which the plaintiffs' counsel appear to be satisfied.

To this amount we are of opinion the judgment appealed from should be reduced, and, as thus reduced, affirmed.

It is therefore ordered and decreed that the amount of the judgment appealed from be reduced to the sum of three hundred and fifty dollars, and that, as thus reduced, the same be affirmed; plaintiff and appellee being taxed with the costs of appeal.