ODOM, Justice.
 

 On December 13, 1925, the La Cour Plantation Company granted a mortgage on the “Maunsell White Plantation” in the parish of Pointe Coupee in favor of the Union Central Life Insurance Company. The plantation as described in the mortgage consists of more than 3,200 acres, including the following:
 

 Lot 24, township 3 south, range 7 east, containing 151.61 acres. In 1932 the Union Central Life Insurance Company proceeded to foreclose by executory process its mortgage, and had all the property, including the above-described lot, seized and advertised for sale. Upon being informed that this lot was included in the seizure and advertisement, the plaintiff, Harry S. Jackson, through his attorney, notified the seizing creditor by letter that he was the owner of the said lot, and asked that the same be released from seizure. The seizing creditor having refused to release the property, plaintiff brought the present suit, alleging that he owned it, and prayed for judgment recognizing his title. He coupled with his suit a prayer for an injunction prohibiting the sale of the property. He also prayed for attorneys’ fees in the sum of $350.
 

 The injunction was granted without objection on the part of the seizing creditor. It filed answer denying plaintiff’s allegations of ownership, and alleged that the lot described was the property of the La Cour Plantation Company, it's mortgagor; that it took a mortgage on the said lot or parcel of land and seized it along with other lands described as comprising the “Maunsell White Plantation,” in good faith believing it to be the property of the mortgagor. It prayed that plaintiff’s demands for recognition of title, as well as his demands for an injunction and attorneys’ fees, be rejected.. The trial court rendered judgment in favor of plaintiff decreeing him to be the owner of the land, perpetuating the preliminary wi'it of injunction, and ordered defendant to pay damages in the sum of $325 as attorneys’ fees. Prom this judgment defendant appealed.
 

 1. The issues involved are, first, whether the above-described lot or parcel of land is owned by plaintiff or the La Cour Plantation Company, defendant’s mortgagor, and, second, if it is. the property of plaintiff, whether defendant should pay the fee of plaintiff’s attorney for enjoining the sale.
 

 The lot or parcel of land in controversy was approved to the state and by the state-sold to Ant A. La Forest in 1852, the sale .being confirmed later by patent. La Forest, the patentee, seems to have dropped out of existence so far as this land is concerned, as there is no record of his having sold it. But
 
 *29
 
 in June, 1894, the land was sold at public auction by the sheriff to Rousseaus: Latour & Co., as the property of one M. Basso. In 1898 the property was sold under a writ of seizure and sale to the State National Bank of New Orleans, in a suit by the bank against F. Roussau et al., and on March 31, 1900, the bank sold the same property to John H. Clan-ton. Glanton sold to Charles Jefferson, on December 13, 1900, and Jefferson in turn sold to Harry S. Jackson, the plaintiff, on October 25,1919.
 

 Plaintiff’s record title therefore traces back to the government with only one missing link in the chain.
 

 The La Cour Plantation Company, defendant’s mortgagor, also has a record title to the same lot of land, dating back to March 29, 1900, on which date Ovide La Cour purchased from the heirs and legal representatives of Maunsell White what is called the “Maunsell White Plantation,” under a deed which included this lot, and Ovide La .Cour sold the same plantation to the La Cour Plantation Company in 1913.
 

 2. It is conceded by defendants that plaintiff has the better record title to the property in controversy. But in support of their title defendants pleaded prescription of 10 and 30 years; it being contended that the La Cour Plantation Company and its author in title have had corporeal possession of the land from March, 1900, down to the present time.
 

 If in fact Ovide La Cour took possession of this property in March, 1900, when he purchased it from the heirs and legal representatives of Maunsell White, and if in fact he and his vendee have possessed the property ever since, a serious issue would be presented concerning the title. But the record shows beyond question that neither Maunsell White, his heirs, Ovide La Cour, nor the La Cour Plantation Company has had at any time possession of the lot or parcel of land in controversy or any portion of it. The testimony shows that Ovide La Cour took possession of the Maunsell White plantation when he purchased it in 1900, and that he continued in possession until he sold to the La Cour Plantation Company in 1913, and that the company has possessed the plantation up to the present time. But the facts disclosed by the record are that this particular lot is not now, and has never been, a part of the Maunsell White plantation. In so far as this particular lot is concerned, it is frankly conceded that no part of it has ever been inclosed or cultivated by the owners of the plantation. The witnesses in speaking of the boundaries of the lot say that it is bounded on the south by the Maunsell White plantation, and in speaking of the boundaries of the plantation they say that it is bounded on the north by this lot. Some of the witnesses, including Jefferson, who purchased the lot in December, 1900, Jackson, the present owner, and a man named Crosby and another named Davis, all of whom having known the property more than 30 years, say that the line between the lot in controversy and the Maunsell White plantation was marked by a surveyor more than 30 years ago. They say, however, that the line was not marked all the way through. There is also testimony that about the year 1900 the Berwick Lumber Company purchased the timber on the Maunsell White plantation and in .removing the timber went over the line and removed some timber from the lot in controversy, and that
 
 *31
 
 later on the owner of the lot was paid for the timber.
 

 Mr. Ovide La Cour, Jr., who is now 40 years old and a aon of Ovide La Cour who purchased the Maunsell White plantation in March, 1900, testified that he was secretary of the La Cour Plantation Company and was familiar with the property. He said he knew that the plaintiff was residing upon and cultivating approximately 50 acres of said lot, and had been for a period of more than 10 years, and that during all that time neither he nor any one else so far as he knew had ever disturbed plaintiff in his possession. He testified further that so far as he knew neither the La Cour Plantation Company nor his father had ever laid claim to said lot.
 

 Just why this particular parcel of land was included in the sale by the Maunsell White heirs to Ovide La Cour in March, 1900, is nob explained. It is certain that they had no record title, the property being owned at the time, so far as the record discloses, by John Clanton, one of plaintiff’s authors in title. The heirs of White evidently doubted the validity of the title, as is indicated by the fact that, whereas they sold all the other land included in the deed under full warranty of title, yet as to this particular lot the deed recites: “It is especially agreed and understood that the vendors herein do not warrant the title to the lot or Sec. 24 Township 3 South Range 7 East, but on the contrary all warranty of every description is hereby waived and excluded, the purchaser especially waiving all claims for the return of the price in case of eviction.”
 

 Now as to the title of plaintiff, he not only has a record title which traces back to the government with only one ifiissing link, but he and his authors in title have possessed the property physically and openly for more than 30 years. The testimony shows that Charles Jefferson cleared and fenced about 50 acres of the land in 1901; that he built a residence up'on it in that year; moved into it and occupied the property continuously until he sold it to plaintiff in 1919; that plaintiff immediately moved into the residence and continued to cultivate the open land down to the time this suit was tried. A part of the land is in the swamp, and it appears that neither plaintiff nor his authors ever made any use of that part of it. But the entire tract was described in the deed as one parcel, and the possession of a part is possession of the whole tract. Civ. Code, art. 3498. Leader Realty Company v. Taylor, 147 La. 256, 84 So. 648, and numerous authorities therein cited; Tremont Lumber Co. v. Powers & Critchett Lumber Co., 173 La. 937, 139 So. 12.
 

 The judgment of the district court recognizing plaintiff as the owner of the property and perpetuating the injunction against the sale thereof is correct and must be affirmed.
 

 3. The remaining question is whether the defendant, the seizing creditor, should be condemned to pay the fee of the plaintiff’s counsel. We do not think so. There is no codal provision or special statute authorizing a plaintiff who prosecutes and maintains an injunction to recover from the defendant the amount paid his counsel as a fee. The general rule is that attorneys’ fees are allowed for the dissolution of injunctions but not for maintaining them. This rule has been sanctioned by this court in many cases.
 

 
 *45
 
 In Melancon’s Heirs v. Robichaud’s Heirs, 19 La. 357, it was held that fees which parties have to pay to their counsel for asserting their rights in courts of justice have never been, nor can they be, considered as costs chargeable to the party cast, and that it is only for the dissolution of injunctions that such fees are allowed.
 

 In Dyke v. Dyer, 14 La. Ann. 701, the property of a third person was seized under a writ of fi. fa. The owner enjoined the sale, and was successful. He claimed attorneys’ fees as an element of damage, which were disallowed, the court saying:
 

 “It is proper to state that there is no law authorizing the plaintiff in injunction to recover from the defendant the amount paid for counsel fees.”
 

 To the same effect is the case of Bank of New Orleans v. Toledano & Taylor, 20 La. Ann. 571, where the court said:
 

 “We
 
 know of no law authorizing plaintiffs in injunction to recover from defendants in injunction the amount incurred for counsel fees,” citing Dyke v. Dyer, supra.
 

 In Campbell v. Short, 35 La. Ann. 465, Campbell had a judgment against Short and seized the property of Wilson, who successfully enjoined the sale and asked for attorneys’ fees as an element of damage, which were disallowed. The court said:
 

 “A plaintiff in a suit, though successful, has no right to saddle his less fortunate adversary with such a charge. And there is no reason why this suit should be considered an exceptional one in this respect.”
 

 In the case of Smith v. Bradford, 17 La. 263, a third possessor of mortgaged property enjoined executory proceedings instituted by the mortgagee and was successful. The court refused to allow attorneys’ fees, and in Hill v. Noe, 4 La. Ann. 304, it was held that fees paid to counsel for prosecuting an injunction against an illegal order of seizure and sale cannot be recovered by plaintiff against defendant where the injunction is maintained..
 

 In Chappuis v. Preston, 28 La. Ann. 729, defendant enjoined the executory process sued out against him on the ground that the sheriff had seized and was about to sell his property without having given him notice of the granting of the order. He prayed for attorneys’ fees, and it was held (quoting the syllabus) that: “It is only where an injunction' is dissolved that the statute allows such damages to be imposed.” Code Prac. art. 304.
 

 In Neveu v. Voorhies, Sheriff, 14 La. Ann. 738, the property of a third person was seized for the debt of another. The third person successfully enjoined the sale and prayed for counsels’ fees, which were allowed by the trial court On appeal, this court said:
 

 “Upon this state of facts, we conclude that the injunction was properly maintained. But we disagree in the allowance of three hundred dollars, as damages against the defendants, being for counsel fees. Under the Acts of 1831 and 1833 the practice is well established to allow attorneys’ fees as special damages, in case of dissolution of injunction. But no precedent has been brought to our notice, of such an allowance, in case of the injunction being perpetuated. It may be, that cases could be found, where attorneys'
 
 *35
 
 fees have been an element
 
 oí
 
 damages for wrongful seizures of property of a party for the debt of another party. But this case is not a case of that kind.”
 

 The court found that “defendant’s proceedings in the premises, which gave rise to this action, are clearly not malicious,- and were based upon probáble cause.”
 

 The case of Townsend v. Fontenot, Sheriff, 42 La. Ann. 890, 8 So. 616, 617, was a suit to restrain the execution of a judgment on the ground that execution was prematurely issued; the judgment creditors having granted a stay of execution. The injunction was maintained, and the plaintiff asked that he be reimbursed the amount of the fee paid his attorneys. This claim was disallowed, and the court said:
 

 “The demand for attorney’s fees cannot be allowed. Such fees are allowed as damages when the injunction is dissolved; never when it is maintained, particularly in the absence of malice and probable cause” citing Dyke v. Dyer, Neveu v. Sheriff, Smith v. Bradford, Hill v. Noe, Flynn v. Rhodes, 12 La. Ann. 239, Bank v. Toledano and Chappuis v. Preston, supra.
 

 .In Iberia Cypress Co. v. Thorgeson et al., 116 La. 218, 40 So. 682, 684, the court again recognized the rule “that a plaintiff in injunction is not entitled to recover attorney’s fees as an element of damages.” In this case plaintiff enjoined defendant from trespassing on its property.
 

 The recovery of attorneys’ fees was denied plaintiffs who maintained injunctions in the cases of Oxford v. Colvin, 134 La. 1098, 64 So. 919, and Fallin v. Stovall, 141 La. 220, 74 So. 911, 916. These were cases where the' plaintiff in injunction was defendant in execution, and in the latter case the court said:
 

 “As to the damages for attorney’s fees, such are not allowed when the plaintiff in injunction is the defendant in execution.”
 

 No,mention was made of those cases where such fees were denied in cases where the plaintiff in- injunction was not the defendant in execution, as in Dyke v. Dyer, Smith v. Bradford, and Campbell v. Short, supra, where the property of third persons was seized and the sale enjoined by the owner, nor was mention made of the case of Iberia Cypress Co. v. Thorgeson, supra.
 

 4. It is suggested that there is hopeless conflict in the jurisprudence on this question, as there are numerous cases holding that, where the property of third persons, strangers to the litigation, is illegally seized under a fi. fa. as the property of the judgment debtor and the owner goes into court, enjoins the seizure, and has it set aside, the plaintiff in injunction is entitled to attorneys’ fees as an element of damage. The leading cases to this effect are Willis v. Scott, 33 La. Ann. 1026; Chapuis v. Waterman, 34 La. Ann. 58; Gilkerson-Sloss v. Baldwin, 47 La. Ann. 696, 17 So. 246; Ludeling v. Garrett, Sheriff, 50 La. Ann. 118, 23 So. 94, 95; Gilkerson-Sloss Co. v. Yale & Bowling, 47 La. Ann. 690, 17 So. 244; American Hoist
 
 &
 
 Derrick Co. v. Frey, 127 La. 183, 53 So. 486; Soniat v. Whitmer et al., 141 La. 235, 74 So. 916, 919; and Bailey v. Williams et al., 158 La. 432, 104 So. 197, 199.
 

 In all these cases, as well as some of an older date, the property of third persons»
 
 *37
 
 not parties to the litigation, was illegally-seized, and the owners were compelled to bring injunction proceedings to protect their rights. These eases are exceptions to the general rule that attorneys’ fees are allowed for the dissolution of injunctions but not for maintaining them. This was pointed out by the court in Iberia Cypress Company v. Thorgeson, supra, where fees were disallowed. Referring to plaintiff’s contention that it should be allowed attorneys’ fees for maintaining the injunction, the court said:
 

 “In support of this contention, plaintiff’s counsel cite Ludeling v. Garrett, 50 La. Ann. 118, 23 So. 94; White v. Givens, 29 La. Ann. 573; Gilkerson-Sloss Commission Co. v. Yale, 47 La. Ann. 690, 17 So. 244. In all three of the cases cited, there was an unlawful seizure of property under a writ of fieri facias. Such cases are exceptions to the general rule that a plaintiff in injunction is not entitled to recover attorney’s fees as an element of damages.”
 

 In those cases where attorneys’ fees were allowed for successfully prosecuted injunctions, the underlying principle which seems to have dominated the holding was that, where a judgment creditor in pursuit of his debtor illegally and without warrant and without the exercise of due diligence, or with malice and without probable cause, seizes the property of a third person, such seizure amounts in law to a trespass and a tort, and gives rise to an action for damages under article 2315 of the Civil Code. Such seizure is a gross abuse of a judicial process, and this court has always required creditors who, in bad faith or on frivolous pretexts, seized the property of third persons and thereby compelled the owners to go into court to assert their rights, to pay attorneys’ fees as an element of damage.
 

 Such eases are readily distinguishable from those which announce and adhere to the general rule that, inasmuch as there is no statute authorizing a plaintiff in injunction suits to recover counsel’s fees where he is successful, none such will be allowed, and those cases holding that where the seizure of the property of a third person under writ of fi. fa. amounts in law to a trespass. None of the cases announcing the general rule has been expressly or impliedly overruled, and it is nowhere indicated that the court intended to lay down the hard and fast rule that, merely and solely because the property of a third person was seized in the execution of a judgment against another, such seizure should warrant the allowance of attorney’s fees as an element of damage for prosecuting the injunction. On the contrary, the decisions are based upon the particular facts before the court.
 

 Time and space forbid a review of all the cases in which such fees were allowed. But referring specially to the most recent one, that of Bailey v. Williams et al., supra, where the court said, “Where property belonging to a third person is illegally seized and the owner is forced to go into court to obtain the release of the seizure, he is- entitled to attorney fees,” the facts of the casé clearly showed that the seizing creditor acted in bad faith and palpably abused a judicial process.
 

 In that case Mrs. Bailey leased her plantation to Williams, who subleased it to Robinson and McVay for pasturing their cattle.
 
 *39
 
 Williams .failed to pay his rent, and Mrs. Bailey provisionally seized Robinson and MeVay’s cattle found on the place. They intervened, claimed the ownership of the cattle, and enjoined the sale. The ownership of the cattle was not disputed. But Mrs. Bailey contended that, as her lessee, Williams, had subleased the land to Robinson and MeVay for a pasture, the cattle found, on the place were subject to her lien and privilege for the payment of the rent due by Williams. But it developed on the trial that, while Robinson and MeVay had put their cattle on the land pursuant to an arrangement with Williams, before doing so, Mrs. Bailey, the lessor, had definitely agreed and promised that no attempt would be made to subject the cattle to her lien and privilege, and that the cattle would not have been put on the place without ,such understanding.
 

 Her seizure of the cattle after waiving her privilege was'in bad faith and a most flagrant abuse of a judicial process. The seizure of the cattle under the circumstances was a willful trespass upon the property of another.
 

 Attorneys’ fees were allowed in the case of Chapuis v. Waterman, supra. The facts there were that Waterman was about to seize under a fi. fa. certain property alleged to belong to his debtor, Mir. Mrs. Chapuis immediately informed him that the property belonged to her, that she had purchased it from Mir by notarial act. Disregarding this notice, Waterman persisted in seizing the property and held it for 167 days.
 

 In the case of Willis v. Scott, 33 La. Ann. 1026, cited in Soniat v. Whitmer et al., supra, as authority for allowing attorneys’ fees in such cases, the claim was not contested in the lower court, and testimony in support of it was admitted without objection.
 

 So in the cases of Gilkerson-Sloss Co. v. Tale & Bowling and Gilkerson-Sloss Co. v. Baldwin, supra, it seems that the claims were not seriously contested.
 

 In Ludeling v. Sheriff, supra, property was seized under a writ of fi. fa. “which was absolutely null.” The owner enjoined and was allowed to recover attorneys’ fees. In support of the decision, two cases are cited, White v. Givens, 29 La. Ann. 573, and Gilkerson-Sloss Co. v. Yale & Bowling, supra. These cases cannot be considered as authority. White v. Givens was overruled in Oxford v. Colvin, supra. See statement to that effect in Fallin v. Stovall, supra. In the Gilkerson-Sloss Case the allowance of the fee was not contested.
 

 In Soniat v. Whitmer et al., supra, the injunction was sued out by plaintiff “to rescue a piece of property from seizure and sale, valued at $175,000, for the debts of a third person,” and fees were allowed. But the court in that case did not pretend to overrule the cases holding that as a general rule such fees are' not allowed for maintaining injunctions. On the contrary, that rule was recognized, for the court said:
 

 “The general rule is that a litigant must pay his attorney. Attorney’s fees are not parts of taxed costs in a suit. And such fees have not been construed as damages, except in those cases where a litigant has abused legal process and the other is compelled to go into court to have the illegal process set aside. In cases where a tort,
 
 *41
 
 or quasi offense has been committed, and the property of a third person has been seized for the debt of another, and the owner of the property invokes the process of the court to maintain his possession and ownership, the latter should be allowed reasonable attorney’s fees, as damages.”
 

 Seizures which are made on probable cause, without malice and in good faith, may cause some inconvenience and even injury to an innocent party. But they do not constitute such trespasses or torts as give rise to the infliction of damages in the way of attorneys’ fees for having the seized property released, and, in the absence of a statute authorizing it, no such damage can be imposed.
 

 We do not intend that this decision shall be construed as overruling those cases in which seizing creditors have been condemned to pay counsel’s fees for maintaining injunctions against such seizures, although some of them may not have had sufficient grounds to support them. On the contrary, we approve the doctrine that, a judgment creditor, who in pursuit of his debtor, seizes the property of a third person without probable cause or on frivolous pretexts, or without availing himself of such sources of knowledge concerning the ownership of the property as are at hand, or through malice and bad faith, thereby violating the right of orderly judicial process, is guilty of a trespass and a tort which gives rise to an action for damages including attorneys’ fees.
 

 5. The case at bar is not in' that class. The Union Central Life Insurance Company, the seizing creditor and defendant in the injunction proceedings, seized the property of plaintiff in injunction. But it did so in utmost good faith. Prior to making the loan to the La Cour Plantation Company, it had an abstract of the “Maunsell White Plantation” made, which abstract showed that the lot or parcel of land which we here hold belongs to plaintiff was part of that plantation.
 

 The abstract failed to disclose plaintiff’s deed or any of the deeds in his chain of title. Defendant’s attorneys who examined the abstract observed that the lot- was included in the sale by the heirs of White to Ovide La Cour in March, 1900, but that the lot was sold without warranty, and that the title did not trace back to the government. They required evidence of possession in order to determine whether the defect was cured by prescription. Accordingly two citizens made affidavit before Mr. M. T. Hewes, an attorney and notary public, that they were familiar with the lands owned by the La Cour Plantation Company described as including the lot here in controversy, and that said plantation company and its vendors, to their knowledge, had “been in actual, continuous, open and notorious possession, holding and claiming the same against all the world for a period of thirty years immediately preceding the date of this affidavit; and have exercised ownership over the same in the following manner, to wit: By residing thereon and cultivating the same as a farm.”.
 

 On the strength of the deed recorded in 1900 and this affidavit, the title was approved. The mortgagee had every reason to believe that this lot belonged to its mortgagor and that no one else laid claim to it. Defendant cannot be penalized in damages
 
 *43
 
 for seizing it and defending its mortgagor’s title under the circumstances.
 

 For the reasons assigned, the judgment appealed from is affirmed in so far as it recognizes1 plaintiff to be the owner of the land and perpetuates the injunction. .Otherwise it is set aside, and plaintiff’s demands for attorneys’ fees are rejected, all costs, including costs of appeal, to be paid by appellant.-.
 

 O’NIELL, O. J., concurs in the result and hands down reasons.