ROGERS, Justice.
 

 On a judgment obtained by the Citizens’ State Bank & Trust Company against I. F. Marlatt and his son, I. Fred. Marlatt, in solido, the liquidator of the plaintiff bank caused an execution to issue, under which the sheriff seized a tract of land containing 1,305 acres of land in Morehouse parish. The land
 
 *390
 
 which stands on the parish records in the name of Mrs. E. E. Marlatt was seized as the property of her husband, I. F. Marlatt, one of the judgment debtors. Mrs. Marlatt sued to enjoin the seizure, alleging that the property seized is her separate property, and, after a hearing, was granted a preliminary injunction. She also claimed damages for the seizure of her property. The defendants in the injunction proceeding denied that the property seized is the separate property of Mrs. Marlatt and averred that it is community property and liable for her husband’s debts. Defendants pleaded estoppel and also prayed for damages for the issuance of the preliminary injunction.
 

 On the trial of the case, the court below dissolved the preliminary injunction, dismissed plaintiff’s suit, and awarded damages in the sum of $760 to the liquidator of the plaintiff bank. From this judgment plaintiff has appealed.
 

 The tract of land seized as the property of I. F. Marlatt was purchased by Mrs. Emma E. Marlatt, his wife, from Mrs. Effie L. Rags-dale on January 5, 1915. The purchase price was $15,000, of which $10,000 was paid in cash and the remaining $5,000 was represented by the two notes of the purchaser, one for $1,250, maturing April 1, 1915, and the other for $3,750, maturing June 26, 1917. At the time the transaction was completed the Marlatts were residents of the state of Kansas. They did not remove to Louisiana until the year 1920, which was after Mrs. Marlatt had taken up her notes and the property in dispute was fully paid for.
 

 Miss Emma Gibson was married to I. F. Marlatt on February 22, 1892. Prior to her marriage, Mrs. Marlatt lived with her uncle and aunt, John Barnett and his wife, Mrs. Elizabeth Barnett, by whom she was raised. On August 17, 1889, Mr. and Mrs. Barnett conveyed to their niece, Miss Gibson, a piece of property in Adams county, Iowa. On March 10, 1896, Mrs. Elizabeth Barnett conveyed to her niece, then Mrs. Marlatt, another piece of property in the same county and state. On November 30, 1914, Mrs. Marlatt sold these properties for $24,375, netting her $17,375, after payment of the mortgages resting thereon. This was one month and five days before Mrs. Marlatt acquired the property in Morehouse parish. Mr. Marlatt inspected that property on two occasions, but the deal was not consummated until Mr. Rags-dale went to Winfield, Kan., where the Marlatts lived, and arranged the terms of the sale with Mrs. Marlatt personally. The deed; of sale was signed by Mrs. Marlatt at Win-field.
 

 Mrs. Marlatt testified that she paid the cash portion of the purchase price from the proceeds of the sale of her properties in Adams county, Iowa. Mr. Marlatt also testified to the same effect. Apparently their testimony is not disputed, and we think it must be accepted as correct.
 

 The-trial judge reached the conclusion from his appreciation of the testimony that the property in dispute was purchased with-funds drawn from a bank account carried in-the name of Mrs. Marlatt but in which were-deposited both separate and community funds indiscriminately, and that therefore-the property was community property, although the community would owe Mrs. Mar
 
 *392
 
 latt an accounting for her separate funds used in its purchase.
 

 After an examination of the record, we find ourselves unable to agree with the judge’s conclusion. Apparently, Mrs. Marlatt always carried a bank account in her own name in which she deposited her separate funds. A statement covering the period between March 8, 1915, and. September 28, 1920, shows the deposits and withdrawals of Mrs. Emma E. Marlatt in the First National Bank, of Winfield, Kan. It was during this period that the two notes representing the credit portion of the purchase price of the property acquired from Mrs. Ragsdale were paid by Mrs. Marlatt. And the bank account in question discloses that Mrs. Marlatt was in possession of ample funds for that purpose.
 

 The conclusion reached by the trial judge is evidently based on what we consider to be the offhand answers of I. F. Marlatt to three questions asked by the trial judge himself. These questions and answers are as follows, viz.:
 

 “Court: What did you do in Kansas— farm? A. Tes, sir.-
 

 “Court: Did you have an individual bank account or not? A. Most of the time it was Mrs. Marlatt’s.
 

 “Court: You just put all of your money in one account? A. Yes, sir, but there was no independent operation in a business way."
 

 In our opinion the statements of the witness are too causal and indefinite to be of any probative value. JE-Ie does not state whether he farmed in Kansas for his own account or for the account of his wife. He does not show that he ever owned an individual bank account. He does answer affirmatively the suggestive question, “You just put all your money in one account?”- with the qualification, “but there was no independent operation in a business way,” what ever that might mean. And he does not state, nor was he required to state, when and what money he deposited in his wife’s account. As against this, Mrs. Marlatt testified she had always deposited her separate funds in her individual bank account, which was always subject to her exclusive order and control. And both Mrs. Marlatt and Mr. Marlatt swore that the entire purchase price of the Ragsdale property was paid by Mrs. Marlatt with her separate funds drawn from her individual bank account, which funds were derived from the sale of her properties In Adams county, Iowa. Their testimony is corroborated by the fact that the sale of the Iowa properties took place just prior to the purchase of. the Louisiana property, and that the funds derived from the sale were more than ample to make the purchase. And their testimony is further corroborated by the uncontradicted showing in the record that Marlatt never possessed any money whatever, while Mrs. Marlatt always had money and was practically the sole support of the family.
 

 The defendants contend that if Mrs. Marlatt’s claim she purchased the tract of land in Morehouse parish with funds derived from the sale of the two parcels of land in Iowa be correct, that fact does not establish the paraphernality of the funds, but, on the contrary, establishes the fact that the
 
 *394
 
 funds were community property. In support of their contention, defendants say there is no showing in the record that the laws of Iowa are different from the laws of Louisiana, and that in the absence of such a showing it will be presumed the laws of both states are the same and jthat the laws of Louisiana control and govern all the issues presented in this case. Defendants admit that the parcel of land acquired by Mrs. Marlatt prior to her marriage was her separate property. But they contend that the situation is entirely different with regard to the parcel of land acquired after her marriage. They argue that this property having been acquired by the wife during the marriage was community property, and that the proceeds derived from its sale were community funds, which were used confusedly with the wife’s separate funds to purchase the Ragsdale property. That the confusion of the separate and community funds in making up the purchase price makes the property purchased community property.
 

 The general rule that the law of another state or country must be pleaded and proved like any other fact is subject to the exception that judicial notice will be taken of the prevalence of the common law in a sister state and of the rules of the common law there prevalent as well. This is because it is a matter pertaining to history of which the court is bound to take judicial notice that the common law is the basis of the jurisprudence of the state in question. Malpica v. McKown, 1 La. 248, 20 Am. Dec. 279; Copley v. Sanford, 2 La. Ann. 335, 46 Am. Dec. 548; Rush v. Landers, 107 La. 549, 32 So. 95, 57 L. R. A. 353.
 

 In Copley v. Sanford this court took judicial notice of the fact that the common law is the basis of the jurisprudence of the state of Mississippi and declared it was our duty to know that the vendor’s privilege upon movables recognized in our Code is unknown in that system, and that at common law he who absolutely sells and delivers a movable is, in the distribution of the assets of a succession among creditors, a mere ordinary creditor. The court said: “Unless the common law has been modified by statute in Mississippi which has not been proved nor even suggested, Watson (the vendor) would have had no privilege as vendor in Mississippi, and as such can have none here.”
 

 As pointed out by Dr. Harriet S. Daggett; associate professor of law in the Louisiana State University, in her excellent treatise on “The Community Property System of Louisiana with Comparative Studies,” at page 3, the community property system prevails in various forms in only eight states of the Union. These states are Arizona, California, Idaho, New Mexico, Nevada, Texas, Washington, and Louisiana.
 

 Applying to this case the rule announced in Copley v. Sanford, which is in accord with the jurisprudence of this state, we must take judicial notice of the fact that the common law forms the basis of the jurisprudence of Iowa, and it is our duty to know that the community property system as recognized in our law is unknown to the common law and is not prevalent in that state. That unless the common law has been modified by statute in Iowa, which has not been proved nor even suggested, the property acquired in Iowa by Mrs. Marlatt during her marriage was not
 
 *396
 
 considered as community property in that state and cannot be considered as such in this state.
 

 Defendants, in their answer, pleaded .that Mrs. Marlatt was estopped to deny that the property in dispute belonged to the matrimonial community, because the property was managed and controlled by her husband, who held himself out to be the owner.
 

 We are satisfied from the record that the only connection I. E. Marlatt had with the property was as the agent of his wife. Mrs. Marlatt, who was the record owner, at no time ever represented that her husband owned the property, or ever consented to his representing himself as such.
 

 Mrs. Marlatt, in her petition, claims two items of damage, viz.: $1,000 for annoyance, vexation, humiliation, embarrassment' and worry, and $1,000 as attorneys’ fees. Admitting that no malice was shown by the seizing creditor, counsel for Mrs. Marlatt have abandoned all claims for damages except the claim for attorneys’ fees. They show that Mrs. Marlatt agreed to pay her attorneys a fee of $1,000 for suing- out an injunction and preventing her property from being sold. And they refer to certain decisions wherein it was held that a plaintiff whose injunction has been sustained is entitled to recover attorney’s fees as damages.
 

 But in the recent case of Jackson v. Bouanchaud, 178 La. 26, 150 So. 567, this court reviewed the jurisprudence on the question of the allowance of attorney’s fees for maintaining an injunction, and held no recovery for attorney’s fees could be had where the seizing creditor acted in good faith having reason to believe the property belonged to the judgment debtor. Counsel for Mrs. Marlatt admit that no malice was shown on the part of the seizing creditor, and the r'ecord discloses that the seizure was made on advice of counsel. In these circumstances, Mrs. Marlatt is not entitled to recover her attorney’s fees as damages.
 

 For the reasons assigned, the judgment appealed from is annulled. It is now ordered that the property herein seized be recognized as the separate and paraphernal property of Sirs. Emma E. Marlatt, plaintiff in injunction, and that the preliminary injunction herein issued and dissolved be reinstated and perpetuated. All costs of suit are to be paid by the seizing creditor, Citizens’ State Bank & Trust Company, in liquidation.
 

 O’NIELL, C. J., concurs in the decree, but adheres to the opinion he wrote in Jackson v. Bouanchaud, Sheriff, 178 La. 26, 150 So. 567.