# CASES
## ARGUED AND DETERMINED
### IN THE
# 𝕾𝖚𝖕𝖗𝖊𝖒𝖊 𝕮𝖔𝖚𝖗𝖙
### OF THE
# STATE OF LOUISIANA.

**EASTERN DISTRICT...MAY TERM, 1830.**

MALPICA
*vs.*
McKOWN & AL.

*MALPICA vs. McKOWN & AL.*

The owner of the vessel is responsible for the acts of the master within the scope of his employment, even for his torts.

Where the laws of the place where the owner resides, and that of the country where the contract of affreightment is entered into, and to be fulfilled, differ, the latter governs.

Foreign laws must be proved like other facts; but where the country now foreign, once made a part of the same empire with that in which the proof is to be administered, the laws common to both, at the time of separation, do not require proof in either, and they will be presumed to remain the same unless the contrary is proved.

Whether the Captain is responsible for money in a trunk, of which no declaration is made when brought on board? *Quere?*

But he is, if it is known to him after the passenger's death, and he does not take care of it.

The value of the vessel does not furnish the measure of responsibility.

It is the duty of the Captain of a vessel, to take charge of the effects of a passenger who dies on board.

*Eastern District.*
*May*, 1830.

MALPICA
*vs.*
McKOWN & AL:

APPEAL from the court of the parish and city of New Orleans.

The petition stated that Malpica embarked at Vera Cruz on board the ship Belle, Mc-Kown master, where he died, leaving money and effects to the amount of $7387.— The petition averred the liability of both master and owner, and prayed judgment against them in *solido*.

Curell in his answer admitted the ownership of the vessel, and set up the following grounds of defence. That, on the voyage a mutiny broke out among the passengers, and 'the command of the ship was forcibly taken from the Captain. That, if the deceased Malpica, had money and effects on board, they never came into the possession of respondent who was in New Orleans, or into that of any of his authorized agents, but that the same was taken possession of by the friends of Malpica, or by the mutinous passengers. That, if any

loss was sustained by the heirs of Malpica, it was caused by the act of those over whom, respondent had no control. That the ship carried no freight, nor was freight chargeable for any effects in the possession of the passengers.

It appeared from the evidence that on the 5th day out, Malpica died. That an inventory was taken of his effects, and the money counted in the presence of the captain, who took charge of his trunk, and delivered the money to one Subietta, a passenger on board. The ship was bound from Vera Cruz to Havana, with about 150 passengers, without freight or cargo. After being at sea about 30 days, the passengers were put on short allowance. A few days afterwards, they (the passengers) put a watch over the provisions and water, and requested the captain to make the first land. Two days afterwards, the vessel reached a small port on the Spanish main, where most of the passengers debarked, among whom, was Subietta, but there was no evidence that he carried the money with him. One witness testified that he returned it to the captain. It further appeared, that when the ship left Vera Cruz, the captain had no notice of any money being on board, nor did he

sign any bills of lading. There was judgment for the plaintiffs in the court below, and the defendant appealed.

MALPICA
*vs.*
McKown & al.

*Eustis* and *Dennis*, for appellee.

The owner of a vessel is liable for the acts of the Captain.

*Duncan*, contra.

The law of the case is with the defendant. C. C. 2263, 2266, 2299. Palfrey *vs.* Kerr, 8 Mart. n. s. Par dessus cours de droit com. vol. 3, p. 93. Boyce *vs* Anderson, 2 Peter's Rep. 150.

PORTER J. delivered the opinion of the court. This action is instituted to receive from McKown, captain, and Curell, owner of the ship Belle, the sum of $7378, which the petition alleges, the deceased, a passenger in the vessel aforesaid, brought on board of her, on a voyage from *Vera Cruz to Havana*, and which, it further alleges, the defendants refused to deliver, though requested to do so.

The proceedings against the captain, appear to have proceeded no further, than to

bring him into court. Against Curell, they have been carried on to final judgment. The latter in his answer, acknowledges the ownership of the vessel, and the voyage, but alleges, that during its progress, a mutiny broke out on board, and that the passengers taking the control of the ship, compelled the captain to land them on the Spanish main. It avers the defendant is not responsible for the money and effects of the passenger who died, because they were taken possession of by the friends of the deceased, or by the mutinous passengers, and it further affirms, that, if the property did not come into the hands of the captain, officers or crew of the vessel, the defendant is not responsible.

The court below, after hearing a great deal of contradictory testimony, gave judgment against the defendant for $6862, from which judgment he appealed.

Without noticing the evidence in detail, its discrepancies, and the reasons which induce us to come to the conclusion we are about to state, we think it establishes: that, the deceased Malpica came on board the ship Belle, at Vera Cruz, as a passenger to Havana, and brought on board with him, a sum of money,

equal in amount to that, for which the inferior court gave judgment; that no freight was paid for it, nor any notice it formed part of his effects, communicated to the captain.— That after the vessel was out some days, Malpica died; that an inventory was made of his effects and property, in which the money was included: that the captain assisted at the counting of the money, but refused to sign the inventory; that he took possession of the trunk, and placed the money in the care of another passenger, who did not take it with him when he debarked on the Spanish main.— That, there was no mutiny on board, nor any act of the passengers which prevented the captain discharging all obligations imposed on him by law, as commander of the vessel, in relation to property, situated as this was. And finally, that the evidence furnishes a strong presumption the captain converted the money to his own use.

On these facts the plaintiff contends the owner is responsible for the acts of the master, and he has especially relied in support of this position on the commercial laws of Spain, the places where the voyage commenced and was to terminate, being in countries governed by these laws.

MALPICA
*vs.*
McKOWN & AL.

The defendant resists the application of the laws of Spain to the case, on two grounds. *First,* that the laws of the place where the ship is owned, must determine the responsibility of the defendants. *Second,* that there is no evidence on record of the laws of *Vera Cruz* and *Havana,* and consequently, the court must presume it to be the same as our own.

And as to the first point, we are of opinion, that the law of the place of the contract, and not that of the owner's residence, must be the rule by which his obligations are to be ascertained. The *lex loci contractus* governs all agreements, unless expressly excluded, or the performance is to be in another country, where different regulations prevail. What we do by another, we do by ourselves, and we are unable to distinguish between the responsibility created by the owner, sending his agent to contract in another country, and that produced by going there and contracting himself.

The owner of the vessel is responsible for the acts of the master within the scope of his employment, even for his torts.

The second offers rather more difficulty. The general rule, certainly is, that courts cannot notice the laws of a foreign state, unless they be proved like other facts. But when countries have once belonged to the same

government, and the same rules prevailed in both, it is not understood by us that the separation of the countries, renders the laws in existence, at the time they divide, foreign to each other. The act of political separation does not destroy the knowledge possessed in both, that they were subject to the same law, and what that law was. Any change made in it after the countries became independent of each other; any new statute passed in either, would certainly come under the general rule. Because it was at no time common to both. But those laws which were, stand on quite a different footing. The rule, like every other in regard to evidence, is founded on good sense. Courts require proof of the laws of another country, because they do not judicially possess the means of knowing them.— But when they do possess judicial knowledge of them, there seems no object in requiring evidence of that, which is already known. We have looked into the jurisprudence on this head, and we do not discover that the different States in the Union require proof the common law prevails in each. Or that it has ever been deemed necessary to establish by testimony, that the same system governs in England.

Where the law of the place where the owner resides, and that of the country where the contract of affreightment was entered into, and to be fulfilled, differs, the latter governs.

Foreign laws must be proved like other facts, but where the country, now foreign, once made a part of the same empire with that in which the proof is to be administered, the laws common to both at the time of separation do not require proof in either, and they will be presumed to remain the same unless the contrary be proved.

It is true, they require proof of British statutes, which never were in force within their own state, but this is in the distinction already alluded to. It is a matter of history, that certain countries formed part of the same kingdom or government, of which, courts of justice take notice, without evidence; and if it be a fact that the countries separated were at one time under the same government, proof of the law at the time of separation is vain, and of no use; for the court knows its own law, which was the law of both.

We therefore think the laws of Spain may be referred to, and considered in the decision of the cause, although they have not been proved as facts.

By one of the laws of the Indies it is made the duty of the master of a vessel, in case any of the passengers die during the voyage, to make an inventory of their property, and deliver it at the port of destination. *Jacobson*, in his sea laws, without referring to any special legislation as authority, declares it to be the duty of the captain to do so. It would seem to us to necessarily result from the duties which masters of vessels have to perform; and its importance cannot be doubted. The

' It is the duty of the captain of a vessel to take care of the effects of a passenger who dies on board.

valuable effects with which men frequently travel, and the unprotected state of their personal property on board a ship, after their deaths, render it necessary that some one should be responsible for its safe keeping. Numerous frauds would otherwise follow. On no one can this duty be so properly imposed, as the captain of the ship, whose situation and authority enable him effectually to discharge it. The present instance presents a case where this duty has been totally neglected. The master either converted the money to his own use, or permitted others to do it, without taking any measures to prevent them, and in either hypothesis, his responsibility is the same. *Curia Phillip. lib.* 3, *cap.* 11, *No.* 13, *Jacobson Sea Laws*, 133.

Our attention has been most turned to that part of the defence which claims immunity for the captain, in consequence of the passenger bringing the money on board without giving notice of it.

We have endeavored, but fruitlessly, to satisfy ourselves, whether the master and owner are responsible for money or precious objects placed among the baggage of a passenger, and of which no particular declara-

*Eastern District. May,* 1830.

MALPICA
*vs.*
McKOWN & AL.

Whether the captain is responsible for money in a trunk, of which no declaration is made when brought on board? *Quere—* but he is, if it is

Eastern District.
*May*, 1830.

MALPICA
*vs.*
McKOWN & AL.

known to him after the passenger's death, and he does not take care of it.

tion is made. The *Consulato del Mare* and the *laws of Wisly,* both treat of the effect of this concealment, on a claim for average, if the objects have been thrown overboard, but they are silent as to the responsibility of the captain in other cases. A law of the Partidas, renders the owner responsible for every thing which is brought on board with the knowledge of the master; but whether the delivery of a trunk or parcel, without a declaration of its contents, would produce responsibility in the case supposed, the law is silent. It is probable it would. No exception is made, and even where the traveller is received through friendship, by carriers on land and water, or keepers of inns, this law makes them responsible for his effects, unless they receive them with an express declaration that the traveller must take care of his own property.

The value of the vessel does not furnish the measure of responsibility.

*Peters Reports, vol.* 1, *appendix, p.* 20, *and* 82; *Consulat de la Mer par Boucher, vol.* 2, *page* 451, *nos.* 855 *a* 860. *Partidas* 5, *lib.* 8, *law* 26.

But whether the master would have been resposible in case the money had been lost before the death of the owner, need not be enquired into. On that event taking place,

the knowledge of the property being on board
was brought home to him. He became by
law the guardian of it, and it was his duty to
take it into his possession and deliver it to the
representatives of the deceased. We find
nothing in the law, and we see no good rea-
son why, on the death of a passenger, the
captain should be discharged from all respon-
sibility in relation to his effects, because he
was not made acquainted with their kind and
value previous to the proprietor's decease.

The responsibility incurred by the master
in this case, of which we have no doubt, set-
tles the question as to the owners. The gene-
ral principle in this matter is so well establish-
ed, as to be familiar. The proprietor of the
vessel is answerable for all acts of the master
within the scope of his employment, even for
his torts. *Abbott on Shipping*, 99, *ed.* 1829;
3 *Kent's Comm.* 162; *Curia Phillip, lib* 3,
*cap.* 12; *Verbo Danos, No.* 29; 6 *John.* 160,
11 *ibid*, 107; 10 *ibid,*

Counsel have endeavoured to limit the res-
ponsibility of the defendant to the value of the
vessel and freight earned. Such a limitation
does exist in several countries, and it is wise,
perhaps that it should. But the general law is

MALPICA
*vs.*
McKown & AL.

otherwise, and the very passage of special statutes limiting the responsibility, acknowledges the previous rule to be otherwise. No such statutory provision is shown to exist in the country where the contract was made, and we cannot supply it.

It is therefore ordered, adjudged and decreed, that the judgment of the parish court be affirmed with costs.