## EUGENIE *v.* PREVAL et al.

Prior to the stat. of 30 May, 1846, the removal of the owner, with a slave, into a country
where slavery did not exist, and the acquisition of a domicil there, emancipated the slave.
That statute cannot be considered as affecting any rights perfected before its passage.

APPEAL by the plaintiff from a judgment of non-suit rendered by the Dis-
trict Court of New Orleans, *Buchanan*, J. *David*, for the appellant.
*Benjamin* and *Micou*, for the defendants. The judgment of the court was pro-
nounced by

EUSTIS, C. J. The plaintiff, who was the slave of *Gallien Préval*, sues for
her liberty, and makes *Préval*, *Mrs. Faure*, his daughter, and *Miss Raynal*,
defendants. *Miss Raynal* and *Préval* disclaimed any ownership, or right of
property in the plaintiff. *Mrs. Faure* asserts her ownership of the plaintiff, and
puts at issue the allegations of the petition. *Mrs. Faure*, before her marriage,
left Louisiana, in the year 1830, for France, and the plaintiff was sent with her.
She married in France, and returned, after several years, to Louisiana, leaving
the plaintiff in France, who only returned in 1838. During the residence of *Mrs.
Faure*, in France, the plaintiff remained in her service. *Mrs. Faure* has since
resided with her father, her husband remaining in the service of France.

*Mrs. Faure* having married an officer in the french army, her domicil be-
came that of her husband, and must so be held, for all purposes relating to her
rights in this suit. Could she hold the plaintiff in slavery in France? It is certain
that she could not. The domicil of the servant and her mistress was in France,
and the court cannot be ignorant of the institutions of a country whose jurispru-
dence is every day referred to in illustration of our own. Merlin, Rép. verbo
*Esclavage*, § 1.

This case is nearly the same with that decided in June last, of *Josephine v.
Poultney*, 1 Ann. Rep. p. 329, in which we held that the *status* of freedom was
acquired, not *by having been* in a country in which slavery did not exist, but by
a residence and domicil there. We did not consider the statute of 1846, relied

upon by the counsel for the defendant, as retrospective in its operation, nor in any manner derogating from the general principle, which is established by our Code, in relation to the effect of laws, art. 8 : " A law can prescribe only for the future ; it can have no retrospective operation, nor can it impair the obligation of contracts." The statute is as follows :

" *An act to protect the rights of slave holders, &c.*

"Be it enacted, &c. That from the passage of this act, no slave shall be entitled to his or her freedom, under the pretence that he or she has been, with or without the consent of his or her owner, in a country where slavery does not exist, or in any of the States where slavery is prohibited."

It cannot be presumed that it was the intention of the legislature to strike at the past, and divest a right acquired by residence in a foreign country. We understand that statute as operating upon the *status* of that class of persons for the future, and not upon any rights which had become absolute and vested before its passage. It settles the law on this subject, on the principle laid down by Lord Stowell, in the case of the slave *Grace*, reported in 2 Haggard's Reports, 94, determined in the High Court of Admiralty of England, on an appeal from the Vice Admiralty Court of Antigua. The common law courts of England have, since the celebrated case of *Somersett*, maintained the contrary doctrine. *Forbes* v. *Cochrane*, 2 Barnwell & Cresswell, 448.

The courts of the different States of the Union, it is believed, have been uniform in their decisions on this subject, and the case of *Smith* v. *Smith*, 13 La. 441, was in conformity with them. In that cause the subject is fully examined, and the jurisprudence of the State is shown to be settled by a series of adjudged cases. The right of the legislature to regulate the condition of this class of persons is unquestionable ; and, in giving the plaintiff the benefit of the condition which she has acquired, it must be understood, that the judgment is confined to the right of owership and dominion, asserted over her by the defendant, who claims her as a slave.

It is therefore decreed that the judgment appealed from be reversed, and that the plaintiff recover her freedom, and that the defendant, *Mrs. Faure*, pay to the plaintiff, the sum of $146, for wages from the institution of this suit ; that the said defendant pay the costs of this appeal ; those of the court below incurred in proceedings against the two other defendants, to be borne by the plaintiff ; the rest to be paid by *Mrs. Faure.**

EUGENIE
*v.*
PREVAL.

---

* *Benjamin* and *Micou*, for a re-hearing. The court, in its judgment, assumes, " that it is certain that the plaintiff could not be held in slavery in France ;" and the opinion is further expressed " that, the court cannot be ignorant of the institutions of a country whose jurisprudence is every day referred to in illustration of our own." The rule of law in Louisiana has been fixed and uniform, " that foreign laws when invoked in favor of a party must be proven as facts," because no tribunal on earth is *omniscient.* *Campbell* v. *Miller*, 3 Mart. N. S. 149. *Hernandez* v. *Garetage*, 4 Ib. N. S. 419. *Norwood* v. *Green*, 5 Ib. N. S. 176. *Bray* v. *Cumming*, 5 Ib. N. S. 254. *Malpica* v. *Mc-Kown*, 1 La. 255. *Crozier* v. *Hodge*, 3 La. 358. But this is not all :at this very moment a bill is pending before the legislature for the purpose of fixing the mode in which the laws of our *sister States* are to be proven in court ; and yet the court declares that it has a judicial knowledge of the *institutions* of a foreign country. The question before the court is not one of general law, of principles relative to contracts, of those matters of general principle which being based on truth and justice are common to all countries and all ages. It is one of *municipal law*. It is an eleventary principle that slavery is a *municipal institution.* If this court has judicial knowledge of the law of France on the subject of slavery, it has the same knowledge of her game laws, of the laws relative to her forests and woods, of the jurisdiction and powers of her mayors, prefects of police and municipal officers. *Re-hearing refused,*