Plaintiff, Mrs. Virginia Chichester, wife of A.J. Lewis, a resident of Edwards, Mississippi, sued American Brewing Company for $16,109.15 as damages for personal injuries and certain incidental expenses. Her petition alleges that on December 27, 1944, at about 8:40 o'clock, P.M., whilst walking upon the sidewalk on the uptown side of Bienville Street between Royal and Bourbon Streets, in New Orleans, she stumbled over a wooden ramp lying adjacent to the sill of a door of the brewing company's building. This ramp was 36 inches wide and measured 7 3/4 inches in height at its end adjacent to the building, and then tapered down to the *Page 110 
level of the sidewalk, having a length of 27 inches. It was described by defendant's witnesses as a wooden runway over which handtrucks were wheeled from defendant's plant to the sidewalk. On the evening in question several steel drums of broken glass had thus been removed from the building, and the ramp was permitted to remain in place as there were other truckloads of materials to be hauled out to the sidewalk. As each handtruck came from the building the night foreman of the brewery would stand on the sidewalk to warn pedestrians.
The negligence charged against the defendant is that its employees negligently created a hazard to pedestrians in permitting the ramp to remain upon the public sidewalk. The defense is a denial of negligence. The answer alleges that the locale of the accident was brilliantly lighted; that the ramp extended only partly across the sidewalk from the wall, and that there was an adequate space of 5 feet upon which pedestrians could walk; that the ramp did not constitute a dangerous obstruction as it was conspicuous and could have been easily discerned by any person exercising ordinary or reasonable prudence, and that such person would not have failed to see it. In the alternative, defendant charged the plaintiff with contributory negligence such as to bar a recovery.
The case was tried by jury in the district court and plaintiff was awarded the sum of $5,000. Defendant has appealed and plaintiff has filed her answer to the appeal praying that the award be increased to the amount claimed in her petition.
There is no dispute that at the time alplaintiff did fall at about the place where the ramp was situated. One of defendant's witnesses admitted that upon hearing a commotion he proceeded to the sidewalk and found that Mrs. Lewis had fallen alongside the ramp.
[1] At the time of the accident plaintiff and her husband, together with four of their friends, were walking upon the sidewalk adjacent to defendant's building; a Mrs. Gaddis and a Mrs. Montgomery were about 15 feet in front of Mrs. Lewis and Mr. Gaddis, and the latter couple were followed by Messrs. Montgomery and Lewis who were several feet behind them. Mrs. Lewis decided to join Mrs. Gaddis and Mrs. Montgomery and called to them to wait for her. She then proceeded forward and after taking a few rapid steps suddenly fell. Defendant's counsel argue that there is no evidence demonstrating that the fall was due to plaintiff's contact with the wooden ramp, and suggest that she slipped and as a result fell to the pavement of the sidewalk. However, we have carefully reviewed the testimony and are convinced that plaintiff did stumble over the ramp. All of the persons who were walking in the party with plaintiff at the time (with the exception of Mrs. Gaddis who, at the time of the trial was deceased) testified that Mrs. Lewis fell and that when they went to aid her they observed that she was lying partly on the wooden ramp. The testimony of Mrs. Montgomery is to the effect that plaintiff "stumbled over something" and when she reached her she saw that "it was the platform." Mrs. Lewis stated that after she had taken the few rapid steps her left foot struck the ramp causing her to fall.
The defendant contends that the locus of the accident was brilliantly lighted and that Mrs. Lewis should have seen the ramp had she been paying the slightest attention to where she was walking. However, there is sharp conflict in the testimony as to the extent of the illumination. Witnesses for the defendant testified that above the sidewalk and extending over it for the full length of the brewery building, there is a glass canopy in which are located four electric lights, and that immediately in front of the building there exists an overdeck which connects the building on the uptown side of the street with the building on the opposite side; that painted on the overdeck is a sign advertising the product of defendant which is lighted by four high powered spot lights, two of them being located on the building on one side of the street and two on the building on the other side. These witnesses testified that the lights are sufficient to brightly illuminate the sidewalk, and one employee of the brewery stated that on several nights he had without difficulty read a newspaper while the lights were burning. On the other hand *Page 111 
witnesses for plaintiff testified that the vicinity was only dimly lighted, and that the ramp could not have been readily seen unless one using the sidewalk paid particular attention to it.
But be that as it may, Mrs. Gaddis and Mrs. Montgomery, who were walking ahead of Mrs. Lewis, had passed the ramp, and the latter testified that they did not observe it. Plaintiff also testified that she did not know of the existence of the ramp and did not become aware of it until she stepped against it, and none of the other persons with her saw it until the accident occurred.
[2] Counsel for plaintiff argue that the color of the ramp blends with that of the sidewalk and from our examination of the photographs in the record this contention would appear to be correct. The ramp, which is unpainted, is worn and discolored and appears to be inconspicuous, and we believe for this reason the attention of the persons in the Lewis party was not drawn to it until Mrs. Lewis' fall. From the testimony as a whole, and from a careful study of the photographs we are impelled to conclude that by permitting the hazardous obstruction to remain unguarded on a public sidewalk the employees of defendant were guilty of gross negligence. This is particularly true when it is considered that the ramp is not a large one and was located off to one side of the sidewalk. It was not in such a position that a pedestrian would readily see it unless by chance he actually had his eyes focused in the vicinity in which it was located. Frederick Sandoz, one of defendant's employees, admitted on cross examination that the management of defendant ordered him to remove the wooden ramp from the sidewalk whenever it was not in actual use. This bit of testimony indicates to our minds that defendant knew of its dangerous propensities.
[3] The law requires that a pedestrian need only exercise ordinary care when traversing a sidewalk or street and it is not necessary for him to look constantly where he is going. He has the right to assume that the roadway is safe and free from hidden dangers or obstructions. The rule is stated clearly in the case of Lemoine v. City of Alexandria, 151 La. 562, 92 So. 58, 59, where the Supreme Court said:
"All that is required of a pedestrian upon a street or sidewalk is ordinary care, and this does not necessitate his looking constantly where he is going. He has the right to assume that the roadway is safe for travel. Weber v. Union, etc., Co., 118 La. 77, 42 So. 652, 12 Ann.Cas. 1012; McCormack v. Robin, 126 La. [594] 598, 52 So. 779, 139 Am.St.Rep. 549."
In Blume v. City of New Orleans, 104 La. 345, 29 So. 106, 107, the defendant was held responsible for plaintiff's injuries caused by a defect in the sidewalk. The Supreme Court said:
"* * * Repeated decisions have settled that municipal corporations owe it to the public to keep the sidewalks in such condition as will not expose the pedestrian to injury. The banquettes are to be kept in a condition safe enough to walk on in the night time as well as during the day. * * *
"The plaintiff, it appears, was ordinarily careful. She had not before passed at night on the banquette at the place in question. The banquette was not safe. Plaintiff was injured while exercising due care. * * *"
In Degeneres v. Pan-American Petroleum Corp., La. App., 153 So. 481, 482, the plaintiff tripped over a pipe adjacent to a filling station which projected 2 1/2 inches through the sidewalk, and was allowed to recover damages for his injuries. The court said:
"* * * The projecting pipe, previous to the time it was lowered, was visible when looked for or looked at, but it was not an obvious object to people walking along the sidewalk in front of the station and not purposefully looking downward for some obstruction of the kind. To them it was inconspicuous and seldom noticed. The conclusion is justified that it was generally unseen, except after having been struck by the foot, which only occurred now and then. * * *
"A sidewalk is a part of the public street, and the public street is for the common use of a city and its inhabitants and strangers alike. Civil Code arts. 450, 454, 458. *Page 112 
"A right of action exists in our law, Civil Code, articles 2315, 2316, 2317, in favor of a party walking along a sidewalk, using ordinary care as he walks, who suffers injury as a result of an obstruction placed in the sidewalk unlawfully, against the party or corporation responsible for the obstruction being in the sidewalk."
In Strickland v. Istrouma Water Co., La. App., 164 So. 347, 348, the defendant was held guilty of negligence in permitting an uncovered water meter box to remain near the edge of the sidewalk, and the boy who fell into it was found not guilty of contributory negligence since "* * * It could have been stepped into, without being observed, by a party walking on the sidewalk, who was not giving attention to where he was placing his fect * * *," especially since it was not in the center but off to the side; that it was "* * * not apt to be observed by one walking ahead, unless looking for holes, * * *."
[4] Counsel for defendant argue that plaintiff was guilty of contributory negligence in not looking where she was walking and because she failed to observe the ramp. Several cases are cited in support of the plea. In each the plaintiff was held guilty of contributory negligence for failure to observe obstructions which were present on the sidewalk, but in each case the court found that the obstruction was conspicuous and could and should have been readily observed. For instance in Antoine v. Saxton Hardware Co., 10 La. App. 427, 121 So. 371, 372, the plaintiff stumbled over one of the conventional, penny-slot type scales which was located in front of defendant's store. We held that the plaintiff was contributorily negligent for failing to observe the scale. We said:
"It is a well-known fact that weighing machines such as the one in question are found on almost every block in the business section of New Orleans, and it is also manifest that they can be easily seen by any person in possession of the sense of sight. It seems to us, therefore, that the doctrine announced in the Burke Case, to which we have referred, is authority for us to hold that a person stumbling over such a machine in broad daylight cannot recover for any injuries which may be sustained."
In Douga v. Ancona Baking Co., La. App., 193 So. 271, 273, another of the cited cases which was decided by this court, a child fell over a bread box lying on the sidewalk. The scene of the accident was well illuminated and the box, which was from 14 to 18 inches high, 3 feet long and 3 feet broad, was painted a conspicuous color. It was lying almost squarely in the center of the sidewalk. We held against plaintiff on the ground that the child was guilty of contributory negligence, saying:
"It is very true that a pedestrian on a sidewalk is not required to keep his eyes constantly fixed on the sidewalk, but it is equally true that such a pedestrian cannot entirely neglect to use ordinary precautions in observing where he is going.
"* * * That the light was abundant and the obstruction was obvious to anyone paying the slightest attention. * * *"
The cited cases, we think, can be distinguished from the one we now consider. In those cases the obstructions involved were quite large and were easily discernible. But in the instant case the ramp, at its highest point, was only 7 3/4 inches above the sidewalk. Moreover it was not near the center of the sidewalk where it would likely have been noticed, but was situated off to one side and rested against defendant's building. Then too, in the Douga case the court observed that the bread box was "conspicuously painted," and in the Antoine case the scale was "painted with white enamel paint, and is quite conspicuous." But the wooden ramp in the instant case was unpainted, much worn, and bore many stains.
[5] Among the items claimed by plaintiff is the value of clothing ruined in the accident amounting to $57.35. Her testimony regarding the loss is uncontradicted and she is undoubtedly entitled to recover this amount.
Plaintiff also claims $1,051.80 for physicians' fees, hospital bills and miscellaneous expenses. In regard to this the defendant contends that plaintiff cannot stand in judgment, as it is an asset of the community *Page 113 
of acquets and gains existing between Mr. and Mrs. Lewis, and that under our law the husband, in his capacity of head and master of the community, is the only one who might sue for its recovery. Our attention is directed by counsel to the cases of Danove v. Mahoney, La. App., 176 So. 404, Simon v. Harrison, La. App., 200 So. 476, Lanza v. DeRidder Coca Cola Co., La. App., 3 So.2d 217, and White v. Coca Cola Bottling Co., La. App., 16 So.2d 579, to the effect that the husband as head and master of the community, and not the wife, must sue for recovery of medical expenses expended for the wife. However, in each of the cited cases the plaintiff was a married woman domiciled in Louisiana, and the evidence showed that her medical expenses had been paid out of community funds, and it was held that the wife could not champion the rights of the community and that the husband must bring the suit for reimbursement.
In the instant case, however, we are confronted with a different situation. Plaintiff's petition alleged and she has proved that she is a citizen of Mississippi. She alleged and proved that she operates a cotton gin in that state which is owned separately by her, and that all of the expenses in question were paid for with her own funds accruing from that business.
[6] Plaintiff produced as a witness a member of the Mississippi bar in an effort to show what the Mississippi law is respecting the rights of married women in that state. Counsel for defendant strenuously objected to the introduction of the testimony, the basis of the objection being that plaintiff had not alleged in her petition what the law of Mississippi was and that, therefore, as she had not alleged it she could not prove it. The objection was overruled by the trial court. Defendant argues that the objection should have been sustained, and urges us to ignore the testimony and indulge in the presumption that the law of Mississippi is the same as that of Louisiana. We find it unnecessary to pass upon the objection or to consider the questioned testimony. Under the doctrine announced by the Supreme Court in the case of Marlatt v. Citizens' State Bank Trust Co. et al.,180 La. 387, 156 So. 426, 428, we are bound to take judicial notice of the prevalence of the common law in a sister state and that under that system of law the community of acquets and gains between the spouses as recognized here is unknown. The Supreme Court said in that case:
"The general rule that the law of another state or country must be pleaded and proved like any other fact is subject to the exception that judicial notice will be taken of the prevalence of the common law in a sister state and of the rules of the common law there prevalent as well. This is because it is a matter pertaining to history of which the court is bound to take judicial notice that the common law is the basis of the jurisprudence of the state in question. Malpica v. McKown,1 La. 248, 20 Am.Dec. 279; Copley v. Sanford, 2 La. Ann. 335, 46 Am.Dec. 548; Rush v. Landers, 107 La. 549, 32 So. 95, 57 L.R.A. 353.
"In Copley v. Sanford this court took judicial notice of the fact that the common law is the basis of the jurisprudence of the state of Mississippi and declared it was our duty to know that the vendor's privilege upon movables recognized in our Code is unknown in that system, and that at common law he who absolutely sells and delivers a movable is, in the distribution of the assets of a succession among creditors, a mere ordinary creditor. The court said: 'Unless the common law has been modified by statute in Mississippi which has not been proved nor even suggested, Watson (the vendor) would have had no privilege as vendor in Mississippi, and as such can have none here.'
"As pointed out by Dr. Harriet S. Daggett, associate professor of law in the Louisiana State University, in her excellent treatise on 'The Community Property System of Louisiana with Comparative Studies,' at page 3, the community property system prevails in various forms in only eight states of the Union. These states are Arizona, California, Idaho, New Mexico, Nevada, Texas, Washington, and Louisiana.
"Applying to this case the rule announced in Copley v. Sanford, which is in accord with the jurisprudence of this state, we *Page 114 
must take judicial notice of the fact that the common law forms the basis of the jurisprudence of Iowa, and it is our duty to know that the community property system as recognized in our law is unknown to the common law and is not prevalent in that state. That unless the common law has been modified by statute in Iowa, which has not been proved nor even suggested, the property acquired in Iowa by Mrs. Marlatt during her marriage was not considered as community property in that state and cannot be considered as such in this state."
[7] It is a well known historical fact that the common law prevails in the state of Mississippi and as a corollary the community of acquets and gains between a husband and wife does not exist therein. The plaintiff and her husband are citizens of that state and as to them there was no community property. Mrs. Lewis for the purpose of this suit is in the same situation as a woman in Louisiana who is separate in property from her husband. She has the right to bring an action in her own name to recover damages sustained by her property or estate. Her husband had no interest in the asserted claim and accordingly possessed no right to bring the action seeking its recovery. The evidence is undisputed that the expenditures were made from the earnings of plaintiff gained from the operation of her cotton gin business, and that the expenses were occasioned as a result of the accident. It is our opinion that she is entitled to recover therefor from the defendant in her own name and for her own account.
[8] Plaintiff's counsel contend that the judgment below is inadequate and that because of the nature of the physical injuries sustained by Mrs. Lewis we should increase the amount allowed. The evidence shows that following the accident Mrs. Lewis, who was 56 years of age, was conveyed to her hotel in a very nervous state and experiencing considerable pain; that she remained in New Orleans for about 3 days and was then taken to Vicksburg, Mississippi, where she was admitted to the Mercy Hospital. She remained in the hospital from December 30, 1944, until January 15, 1945. It was found by the physicians that echimotic spots developed over her left sacroiliac joint and the ligament was torn. She was administered opiates for relief of pain and infrared therapy was employed. It was found necessary for her to wear a special sacroiliac support, and upon leaving the hospital for her home she was advised that she should sleep with a board located under the mattress of her bed. On February 8, 1945, she was again taken to the hospital at Vicksburg for further study and treatment and remained there until February 21st. Plaintiff's knee, which was still swollen, was again x-rayed and her back and spine were reexamined. It later developed that plaintiff had suffered a ruptured disc between the 4th and 5th lumbar vertebræ. The medical testimony, which is undisputed, shows that Mrs. Lewis had three distinct injuries: to the left knee, to the left sacroiliac joint, and the ruptured intervertebral disc. At the time of the trial in the district court, which occurred 14 months after the date of the accident, plaintiff was still under the care of her physician, Dr. Street. She still wore the sacroiliac belt and testified that she had continual pains.
Dr. Street testified:
"Well, I think she should be entirely cured in the course of time from the knee injury, and I believe as far as the sacroiliac injury is concerned she is going to have to wear a sacroiliac support for an indefinite period of time. Now, what the future of the ruptured disc holds for her, we do not know. If the symptoms continue as they are now, or become aggravated as they frequently do, she will require an operation on her back."
The doctor estimated that about 75 or 80 per cent of the cases can be relieved by operation, but there is no way of forecasting in advance which cases can be cured.
Counsel for the defendant cite the case of Burke v. Toye Bros. Yellow Cab. Co., La. App., 28 So.2d 369, decided by this court in December 1946. Mrs. Burke was 63 years old and suffered general contusions, a sprained left ankle, disc injury to the 7th vertebræ, remained in the hospital for 7 days and was confined to bed at home for several weeks. Twenty months after the *Page 115 
accident she was still suffering and her physician suggested an operation to correct the disc injury, which was characterized as a major operation. Her medical expenses were $465.23 and her loss of wages aggregated $544.51. She was awarded $4,000.
However, Mrs. Lewis' injuries appear to be more serious than those suffered by Mrs. Burke, and she sustained a sacroiliac injury in addition to the ruptured disc. The jury below awarded her $5,000 and did so evidently on the theory that whereas the injuries were more severe than those sustained by Mrs. Burke she should have $1,000 more than was awarded to the latter.
It appears to us that the amount awarded is adequate and should neither be increased nor decreased.
For the reasons assigned the judgment appealed from is affirmed.
Affirmed.